JAMES B. DAY & COMPANY,
a corporation, Plaintiff,

v.

REICHHOLD CHEMICALS, INC., a
corporation, Defendant.

No. 73 C 1380.

United States District Court,
N. D. Illinois, E. D.

Aug. 30, 1973.

———◆———

Laurence Kallen, Hertz & Kallen, Chicago, Ill., for plaintiff.

William J. Holloway, and Douglas Reimer, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the plaintiff's motion to strike the counterclaim of the defendant pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

This is an action to redress an alleged breach of contract by the defendant. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy is alleged to exceed the sum of $10,000.00 exclusive of interest and costs.

The plaintiff, in the complaint, alleges, *inter alia*, the following facts:

1. The plaintiff is James B. Day & Company, incorporated under the laws of the State of Illinois, having its principal place of business in the State of Illinois. The defendant is Reichhold Chemicals, Inc., a corporation incorporated under the laws of a state other than Illinois, having its principal place of business in the State of New York. The plaintiff is now and has been since 1906 a manufacturer of paints and lacquers, and sells its products to industry and trade retailers throughout the United States and foreign countries. The defendant is a

producer of resins which are utilized in the manufacture of lacquers.

2. On October 16, 1972, November 27, 1972, December 29, 1972 and February 2, 1973 the plaintiff placed telephone orders with the defendant for the defendant's "43–11" resin. Plaintiff's orders were accepted immediately over the telephone by defendant. These orders totaled 95,000 pounds of "43–11" resin, all of which were to be delivered to plaintiff at Carpentersville, Illinois. The telephone orders were delivered by defendant on November 7, 1972, December 15, 1972, January 8, 1973 and February 4, 1973 respectively.

3. Defendant knew or had reason to know that plaintiff would use the resin in the manufacture of plaintiff's lacquer products and that plaintiff was relying upon defendant's skill to furnish a suitable resin. There was an implied warranty by defendant to plaintiff that the resin would be fit for the particular purpose of being utilized in the manufacture of plaintiff's lacquers. There was an implied warranty by defendant to plaintiff that the resin would be of merchantable quality. There was an implied warranty by defendant to plaintiff that the resin would be suitable for use in plaintiff's lacquers, which warranty arose out of the prior course of dealing between parties. The respective offers and acceptances were oral, and were not evidenced by any writings prior to the times of delivery. Defendant breached said agreement with plaintiff in that the resin delivered to plaintiff under the oral agreements caused plaintiff's lacquers to be inferior, defective and damaging to wood, and plaintiff has revoked its acceptance of defendant's deliveries of resin under the oral agreements. On or about February 8, 1973 plaintiff tendered 23,100 pounds of unused resin to defendant, which return was accepted by defendant. On or about April 9, 1973, plaintiff tendered 2,350 pounds of unused resin to defendant, which return was accepted by defendant.

4. Defendant has demanded payment of $7,905.50 from plaintiff for the resin delivered under the agreements. Plaintiff has suffered $12,200.33 in out-of-pocket costs for materials and containers utilized in manufacturing lacquers which because they contain defendant's defective resin cannot be sold by plaintiff. Plaintiff has expended $747.70 in labor costs in manufacturing lacquers which because they contain defendant's defective resin cannot be sold by plaintiff. Plaintiff has expended $152.35 in attempting to correct the defects caused by defendant's defective resin. Plaintiff has expended $179.46 for freight in accepting returns of its product caused by defendant's defective resin and has lost profits on lacquers so returned. Plaintiff has expended $2,000.00 to replace the woodwork in a private home, which woodwork was damaged by plaintiff's lacquer produced with defendant's defective resin. Since February, 1973, plaintiff has been required to store the lacquers made with defendant's defective resin on plaintiff's premises, which storage has the reasonable value of $210.00 per month. For a period of several months, plaintiff was required to reject orders for its lacquers owing to the fact that the only lacquers it had on hand were those produced with defendant's

defective resin, and as a direct consequence plaintiff has lost profits. The inability to fill orders not only resulted in a loss of profits to plaintiff, but also resulted in potential buyers turning to other sources of supply, with long-range adverse consequences to plaintiff resulting in loss of future profits. Plaintiff has also suffered damage to its reputation, good will, trademarks, tradename, and patents as a result of the deliveries of defendant's defective resin under the agreement.

The plaintiff seeks the award of $60,000.00 in damages for the defendant's breach of contract.

The defendant in response to the instant complaint has filed a counterclaim against the plaintiff.

The defendant counterplaintiff in the counterclaim alleges, *inter alia,* the following facts:

1. Pursuant to oral telephone orders placed by the counterdefendant, the counterplaintiff sold and delivered from the period of October 16, 1972 until February 2, 1973 a total of 95,000 pounds of "43–11" resin.

2. That on or about February 23, 1973 the counterplaintiff granted the counterdefendant a credit in the amount of $5,428.50 to reflect the return by the counterdefendant to the counterplaintiff of approximately 23,100 pounds of unused resin.

3. On or about April 30, 1973 the counterplaintiff granted a credit in the amount of $552.25 to reflect the return by the counterde-fendant to the counterplaintiff of approximately 2,350 pounds of unused resin.

4. As a result of the above mentioned sales and credits there is at this time due and owing from the counterdefendant to the counterplaintiff the sum of $7,353.29.

In response to the defendant's counterclaim the plaintiff counterdefendant has filed the instant motion to strike. In support of the instant motion the plaintiff counterdefendant contends that the counterclaim merely amounts to a denial of allegations contained in plaintiff's complaint.

The defendant counterplaintiff in opposition to the instant motion contends that the counterclaim is proper.

It is the opinion of this Court that the instant counterclaim is proper.

■ Rule 13(a) of the Federal Rules of Civil Procedure provides that any cause of action which a party has against his opponent that has a logical relationship to the main action and arose out of the same transaction or occurrence as the opponent's claim must be pleaded as a counterclaim in a federal action.* Union Paving Company v. Downer Corporation, 276 F.2d 468 (9th Cir. 1960). Such a pleading is compulsory. If a party fails to plead the cause of action or counterclaims he is held to have waived them and is precluded by *res judicata* from ever suing upon them again. Hancock Oil Co. v. Universal Oil Products Co., 115 F.2d 45 (9th Cir. 1940); E. J. Korvette Co. v. Parker Pen Co., 17 F.R.D. 267 (S.D.N.Y.1955)

■ The apparent purpose of such a compulsion is to prevent a multiplicity of lawsuits.

---

* Rule 13 of the Federal Rules of Civil Procedure provides, in relevant part:

*(a) Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action.

It is clear to this Court after examining the relevant pleadings in the instant action that the defendant's counterclaim has a logical relationship to the plaintiff's complaint, in fact, the plaintiff in paragraph 13 of the complaint alludes to the defendant's claim. Further, the counterclaim arose out of the same transaction or occurrence as the plaintiff's complaint, namely, the contract between the parties.

Thus the defendant's counterclaim is proper.

Accordingly it is hereby ordered that the plaintiff's motion to strike the counterclaim is denied.