**MONTECATINI EDISON, S.P.A. (a corporation of Italy) Appellee,**

v.

**Karl ZIEGLER, Appellant,**

**and**

**E. I. Dupont de Nemours and Company (a corporation of Delaware).**

**No. 72–1281.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1973.

Decided Oct. 5, 1973.

Arnold Sprung, Nathaniel D. Kramer, New York City, with whom James N. Dresser, Washington, D. C., was on the brief, for appellant.

Ralph M. Watson, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court with whom A. Donald Messenheimer, Washington, D. C., was on the brief, for appellee.

Before McGOWAN and TAMM, Circuit Judges, and JAMESON,* Senior United States District Judge for the District of Montana.

TAMM, Circuit Judge:

This is an appeal from a final order of the United States District Court for

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

the District of Columbia dismissing appellant Ziegler's counterclaim.

Both parties have filed applications for patents claiming a certain process for homopolymerizing propylene. Two other parties have also filed applications claiming the same process. In order to resolve this conflict, the Patent Office instituted Interference No. 90,833, a proceeding to determine the question of priority of invention.[1] On September 15, 1969, almost ten years after the interference was declared, the Patent Office Board of Patent Interferences awarded priority of invention to Ziegler. The Montecatini Edison Company (hereafter, "Montecatini") then commenced this action under 35 U.S.C. § 146 (1970), which authorizes any party to an interference who is dissatisfied with the Board's award to proceed by civil action to obtain an adjudication of his right to a patent. Ziegler filed an answer requesting dismissal of the complaint as well as a declaration that his assignors were the prior inventors. In addition, the answer interposed a counterclaim which asserts that Ziegler is the rightful owner of "all property rights of, and sums and royalties received by plaintiff, Montecatini, in the United States in the olefin polymerization field."[2] The counterclaim alleges that Montecatini, surreptitiously and in violation of a relationship of trust and confidence between Ziegler and Montecatini, misappropriated certain inventions of Ziegler, and used them to "develop a patent position"[3] in the United States in the field of olefin polymerization. According to the uncontradicted assertions of Montecatini both at oral argument of the motion to dismiss the counterclaim in the district court[4] and in its brief on appeal,[5] Montecatini's "patent position" in the field now includes eighty-five United States patents. The court is asked to impress a trust in favor of Ziegler upon all property rights of Montecatini in this field and to appoint a receiver *pendente lite*.[6]

Montecatini moved dismissal of the counterclaim pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that the district court lacks subject matter jurisdiction of the counterclaim. The district court agreed and entered an order dismissing the counterclaim. The order was made final under Rule 54(b) of the Federal Rules of Civil Procedure and Ziegler took this appeal. We reverse.

Montecatini makes two contentions in support of the dismissal: *first*, that permissive non-Federal counterclaims such as Ziegler's are not cognizable in section 146 proceedings; *second*, that, even if such counterclaims may be entertained in section 146 actions, the district court lacks subject matter jurisdiction of the Ziegler counterclaim. The first contention takes various forms in the Montecatini brief[7] and appears to be the rule of decision adopted by the trial court, as reflected in the following excerpt from its memorandum opinion:

> The first and foremost consideration is the nature of the proceeding under 35 U.S.C. § 146. A party dissatisfied with the decision of the Board of Patent Interference on a question of priority of intervention between conflicting patent applications may pursue a civil action against the other parties to the interference proceeding. This action is not a standard civil action. It is more in the nature of a review of an adminis-

---

1. 35 U.S.C. § 135(a) (1970).

2. Ziegler Answer, J.A. at 14.

3. Ziegler Answer, J.A. at 12.

4. J.A. at 26, 28.

5. Appellee's Brief at 5.

6. J.A. at 14.

7. The brief includes the following two contentions at 6, 13:

  A. A permissive non-Federal counterclaim may not be interposed in an action under 35 U.S.C. § 146.

  B. An action under Section 146 of the Patent Statute is limited to a review of the decision of the Board of Patent Interferences on issues that were raised in the Patent Office.

trative proceeding with inherent limitations on the issues which may be raised in the original claim or by counterclaim.

. . . .

In addition, counterclaims which are not compulsory are generally not allowed in actions arising under special statutory provisions.

Montecatini Edison, S.P.A. v. Ziegler, Civil Action No. 3291/69 (D.D.C., filed January 25, 1972). We believe that the district court erred in holding that permissive counterclaims may not be entertained in section 146 actions. This is a novel and complex question, however, and we would be remiss if we did not discuss the authorities relied upon by the appellee and the district court. Following that discussion we shall take up the question of subject matter jurisdiction over the Ziegler counterclaim.

### I.

■■■ At the outset it must be pointed out that Montecatini's position (*i. e.,* that permissive, non-Federal counterclaims may not be asserted in section 146 actions) is in derogation of both the express provisions and the underlying policies of the Federal Rules of Civil Procedure. Rule 13 provides that a pleading *may* state any permissive counterclaim and *must* state any compulsory counterclaim.[8] The word "may" is not intended to confer any discretion upon the court with respect to a permissive

counterclaim; rather, it gives the litigant a choice either to assert or not to assert a permissive counterclaim. If he elects to plead it, the court must entertain it so long as it is within the court's subject matter jurisdiction. Switzer Brothers, Inc. v. Locklin, 207 F.2d 483, 488 (7th Cir. 1953), cert. denied, 347 U. S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954); Michigan Tool Co., Inc. v. Drummond, 33 F. Supp. 540, 542 (D.D. C. 1938).[9] In effect, Rule 13(b) confers upon a litigant the right to have his permissive counterclaim heard and determined along with the claims of his adversary. The objective of the Federal Rules with respect to counterclaims is to provide complete relief to the parties, to conserve judicial resources and to avoid the proliferation of lawsuits. Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822, 827 (2d Cir. 1963), cert. denied, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964). Thus, Montecatini assumes a great burden in attempting to persuade this court that the usual rule as to permissive counterclaims should not apply in a section 146 proceeding. We conclude that the burden has not been carried.[10]

Montecatini's argument on this point is founded upon two asserted principles of law, each relying upon a separate line of cases: (A) the parties to a section 146 action may not raise new issues which were not presented before the Patent Office in the antecedent interference proceedings;[11] (B) permissive

---

8. Rule 13 states, in pertinent part:
(a) Compulsory counterclaims.

A pleading shall take as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .
(b) Permissive counterclaims.

A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

9. Under Rule 13 the court may refuse to permit the pleading of a counterclaim in only two instances: (1) where the claim accrues to a party after he has already filed his pleading [Rule 13(e)]; and (2) where the party has inadvertently omitted the counterclaim from a pleading already filed [Rule 13(f)].

10. By the terms of the Rules themselves, Rule 13 does apply to section 146 actions. Rule 1 makes all of the Rules applicable in "all suits of a civil nature . . . with the exceptions stated in Rule 81." Rule 81 contains no exception for section 146 actions. See, also, 2 Moore, Federal Practice ¶ 1.-03[4] (2d Ed. 1970).

11. Appellee's Brief at 13–17.

counterclaims are generally not entertained in actions arising under special statutory provisions such as section 146.[12]

■ A. The first part of Montecatini's argument correctly states a rule of law in section 146 proceedings, but it is a rule which has no application to a counterclaim such as the one at issue on this appeal. This is clear from the very authorities cited by the appellee. In Radio Corporation of America v. Philco Corp., 201 F.Supp. 135 (E.D.Pa. 1961), aff'd, 309 F.2d 397 (3d Cir. 1962),[13] for example, it was held that a defendant in a section 146 action cannot litigate the issue of patentability (of his adversary's application) in the district court after failing to properly raise the issue before the Patent Office. The rationale of this ruling was that the defendant had waived the defense since he did not take advantage of the opportunity to present it in the Patent Office:

An orderly policy of judicial administration dictates that a party in any adversary proceeding, including an interference, should not be permitted to circumvent initial stages in the prosecution of his cause by raising totally new issues at the review or appellate levels; otherwise a party might too easily ambush his opponent and, in this case, the Patent Office itself, after lengthy administrative proceedings. Courts should not be deprived of any assistance which might be gained from the expertise of the quasi-admin-

istrative agency, i. e., the Patent Office.

[Defendant] failed to raise this issue before the Primary Examiner, yet had adequate opportunity to do so.

Id. at 143. The same reasoning was adopted in Potter Instrument Co. v. Mohawk Data Sciences Corp., 309 F.Supp. 866, 867 (S.D.N.Y. 1969) and General Motors Corp. v. R. E. Dietz Co., 137 U.S.App.D.C. 100, 420 F.2d 1303, 1305–1306 (1969). In an analogous decision in a section 145 case, we have referred to this rule as a "phase of the doctrine of exhaustion of administrative remedies." DeSeversky v. Brenner, 137 U.S.App.D.C. 369, 424 F.2d 857, 859 (1970).[14]

■ While it is clear that these decisions enunciate a salutary principle of judicial administration, it is equally clear that this principle does not extend to the Ziegler counterclaim. The counterclaim pleads a common law cause of action sounding in tort and seeks various legal and equitable relief. Such a claim is obviously beyond the jurisdiction of a Patent Office tribunal. It was not presented before the Board of Patent Interferences because it could not be presented there. Under these circumstances, failure to assert the claim is not a waiver and Ziegler is not estopped from interposing his counterclaim in this action.[15] Our conclusion on this point is reinforced by the fact that both joint claims and counterclaims have been entertained in the past in actions under section 146 and its predecessors where

12. Id. at 6–13. This ground is also relied upon by the district court in its opinion, reported at 15 Fed.Rules Serv.2d 1193, 1194, Civil Action No. 3291/69 (D.D.C., filed January 25, 1972).

13. Cited in the Appellee's Brief at 14 and in the district court's memorandum opinion. 15 Fed.Rules Serv.2d at 1194.

14. Although DeSeversky arose from an action under section 145 (to review an adverse decision of the Patent Office Board of Appeals) rather than section 146, its reasoning governs for both types of actions. Indeed, one of the authorities relied upon in DeSeversky is our decision in General Motors Corp. v. R. E. Dietz Co., 137 U.S.App.D.C.

100, 420 F.2d 1303 (1969), a section 146 case.

15. The Montecatini brief discusses several other decisions in addition to the ones we have mentioned. Except for two of these which are completely irrelevant, we believe they, too, come within the interpretation we have stated. See Cody v. Aktiebolaget Flymo, 306 F.Supp. 728, 730 (D.D.C. 1969), aff'd, 146 U.S.App.D.C. 345, 452 F.2d 1274 (1971), cert. denied, 405 U.S. 990, 92 S.Ct. 1254, 31 L.Ed.2d 456 (1972); Sperry Rand Corp. v. Bell Tel. Laboratories, 173 F. Supp. 714, 715 (S.D.N.Y. 1959), appeal denied, 272 F.2d 29 (2d Cir. 1959).

such claims could not have been decided by the Board of Patent Interferences and were not presented to it.[16]

■ In this connection, one further issue remains to be resolved. It is argued that the patent law provides an exclusive remedy for Ziegler's claims and that he should not be permitted to seek substitute relief in this action.[17] This contention is only partially accurate. Montecatini correctly points out that Ziegler could have presented his claims to the Patent Office by filing a rival application within one year after any of the Montecatini patents was issued, thereby provoking an interference.[18] This is not the only course of action available to a person in Ziegler's position, however, and his failure to pursue it does not bar him from seeking judicial relief based upon a common law theory of action. In Friedman v. Washburn Co., 145 F.2d 715 (7th Cir. 1944), the plaintiff brought an action in diversity charging the defendant with misappropriation of a certain invention and sought to impress a trust upon the defendant's patent and the proceeds thereof. The defendant objected that the complaint was, in essence, an attack on the validity of his patent, and that plaintiff's sole remedy was to seek relief in an appropriate Patent Office proceeding. The court rejected the defendant's argument:

> We think there can be no doubt but that if, in fact, appellee did misappropriate an invention confidentially disclosed to it by appellant, the latter is entitled to relief [citations omitted], and that he is not confined to the procedure provided by the patent laws to obtain such relief.

*Id.* at 718. In concluding that its decision did no violence to the patent laws, the court relied upon the decision of the Supreme Court in Becher v. Contoure Laboratories, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929). In that case the respondent had recovered a state court judgment impressing a trust upon the petitioner's patent on the ground that he had obtained it in breach of a confidential relationship with respondent. Petitioner then brought a separate action for infringement in the federal court requesting, among other things, that respondent be enjoined from enforcing the state court judgment. The petitioner's complaint was dismissed and the Supreme Court affirmed. Speaking for the Court, Justice Holmes concluded that respondent had a valid claim for relief which was completely independent of the patent laws:

> It is not denied that the jurisdiction of the Courts of the United States is exclusive in the case of suits arising under the patent laws, but it was held below that the suit in the State Court did not arise under those laws. It is plain that that suit had for its cause of action the breach of a contract or wrongful disregard of confidential relations, both matters independent of the patent law, and that the subject matter of [respondent's] claim was an undisclosed invention which did not need a patent to protect it from disclosure by breach of trust.

*Id.* at 390–391, 49 S.Ct. at 357. Here, too, Ziegler's claims rest on grounds independent of the patent law, and he is not foreclosed from asserting them by the mere fact that an alternative remedy is afforded by the patent law. It should be emphasized, however, that we are

---

16. *See* McFarlane v. Resinite Corp., 273 F. Supp. 224 (N.D.Ill. 1967) (suit under section 146 joining claims for infringement and unfair competition) ; Etten v. Lovell Mfg. Co., 4 F.R.D. 233 (W.D.Pa. 1945) (suit under predecessor of section 146 joining claim charging conspiracy to give false testimony) ; Michigan Tool Co. v. Drummond, 33 F.Supp. 540 (D.D.C. 1938) (counterclaim for infringement) ; E. I. du Pont de Nemours and Co. v. Atlas Powder Co., 24 F.Supp. 263 (D.Del. 1938) (counterclaim for infringement). Note that all of the preceeding cases but *McFarlane* were decided under the predecessor to section 146, Revised Statutes § 4915, as amended (formerly codified at 35 U.S.C. § 63).

17. Appellee's Brief at 17.

18. *Id.*; 35 U.S.C. § 135 (1970).

now speaking, not of alternatives which were available in the proceeding under review, but of alternatives which might have been pursued by the institution of some other, unrelated proceeding. As we have stated above, however, if there had been means available for Ziegler to have presented his claims to the Patent Office in the proceedings now under review, his failure to utilize them would have been a waiver and he would be stopped from prosecuting them in this action.

B. The second part of Montecatini's argument consists of a discussion of a number of decisions in which the courts have declined to entertain counterclaims. Appellee concludes that these cases establish a general rule prohibiting permissive non-Federal counterclaims in proceedings under "special statutory provisions" such as section 146.[19] None of the cases cited involves a section 146 proceeding, however, and none of them purports to state the general rule urged by Montecatini.

(*i*) Brotherhood of Railway Trainmen v. Denver & Rio Grande Western Railroad, Co., 31 F.R.D. 297 (D.C.Colo. 1962), cert. denied, 380 U.S. 972, 85 S. Ct. 1330, 14 L.Ed.2d 268 (1965), involved a proceeding to enforce an award of the Railroad Adjustment Board. The enforcement proceeding is commenced by a petition setting forth the award of the Board. Under provisions in force at the time of the *Brotherhood* decision, the order was "prima facie evidence" of the facts it recited.[20] In *Brotherhood,* the court dismissed a counterclaim by the delinquent employer which sought damages for losses resulting from a strike called by the union. Although the reasoning of the court is not explicit, it appears to conclude that the statute contemplated a summary enforcement procedure which should not be encumbered with counterclaims. While there appears to be some disagreement with this holding, [21] we do not express any views as to its correctness. Suffice it to say that a section 146 action is a horse of an entirely different color. Section 146 contemplates a trial *de novo* of the issue of priority of invention.[22] It is in no sense an enforcement proceeding but a review proceeding. Furthermore, the issues presented in a section 146 action are rarely as urgent as a railway labor-management dispute which might disable an important facility of interstate commerce.[23]

(*ii*) In Georgia Jewelers, Inc. v. Bulova Watch Co., 302 F.2d 362 (5th Cir. 1962), the court dismissed the bankrupt's counterclaim against the petitioners which charged abuse of process and conspiracy to destroy its financial reputation. The case is particularly inapposite because bankruptcy proceedings are expressly excepted from the usual rules as to counterclaims. Fed.R.Civ.Proc., Rule 81(a)(1). Order 37 of the General Orders and Forms in Bankruptcy, 11 U. S.C. following § 1103, makes the Federal Rules applicable in proceedings under the Bankruptcy Act "in so far as they are not inconsistent with the Act." In *Georgia Jewelers,* however, the court found that "[t]here is really no place

---

19. Appellee's Brief at 6.

20. Act of May 20, 1926, ch. 347 § 3, 44 Stat. 578, *as amended,* 45 U.S.C. § 153 subd. 1(p) (1970). The provision has since been amended to make the Board's order "conclusive" on the parties and to restrict the scope of review. An order can now only be overturned if the Board has failed to comply with the statute or has exceeded its jurisdiction or if the order is defective by reason of fraud or corruption committed by a member of the Board.

21. While affirming the dismissal of an employer's counterclaim in one such proceeding,

the Court of Appeals for the Fifth Circuit implied that permissive counterclaims can be interposed in an action to enforce the Board's award. Diamond v. Terminal Railway Alabama State Docks, 421 F.2d 228, 236 (5th Cir. 1970).

22. Radio Corp. of America v. Philco Corp., 201 F. Supp. 135, 143 (E.D. Pa. 1961), aff'd, 309 F.2d 397 (3d Cir. 1962).

23. The recent amendments of the enforcement procedure discussed in note 19 will give some idea of the extraordinary need for finality in matters affecting railway operations.

for such a counterclaim in the statutory scheme" since the bankrupt's counterclaim could not augment the estate or offset a creditor's claim. *Id.* at 369. Plainly, the reasoning of this decision cannot govern the present appeal.

(*iii*) United States ex rel. Rodriquez v. Weekly Publications, Inc., 74 F.Supp. 763 (S.D.N.Y. 1947), was a statutory [24] *qui tam* action seeking to recover a penalty against the defendants for presenting fraudulent claims to the government. The court dismissed a counterclaim against the informer on the ground of public policy, stating that to permit such counterclaims would deter future informers' actions. While we express no opinion as to the correctness of this decision, it is clear that the court based its ruling upon considerations which do not arise in section 146 actions.

(*iv*) In Donnelly Garment Co. v. ILGWU, 47 F.Supp. 65 (W.D.Mo. 1942), an employer obtained an injunction against a union. After the injunction was ultimately vacated, the union presented a claim under section 7 of the Norris-LaGuardia Act [25] for damages caused by wrongful issuance of the injunction. The union was not required to commence a separate action but proceeded in the same action (i. e. the employer's injunction suit) to seek an assessment of damages against the plaintiff-employer and his surety. The employer attempted to interpose a counterclaim for damages based upon the same conduct as to which the injunction had been granted. The court refused to entertain the counterclaim, stating that the assessment of damages proceeding was "merely a last step" in the employer's action, "in effect nothing more than an expansion of the proceeding looking to the taxation of costs." In addition, the court concluded that the statute contemplated "a speedy and summary proceeding" and that Congress did not intend for other issues to be determined therein. *Id.* at 68–69. Again, we think that this decision involved a question quite different from that under discussion and cannot control our decision of this appeal.

(*v*) United States v. John A. Johnson & Sons, 65 F.Supp. 514 (D.Md. 1945), aff'd, 153 F.2d 534 (4th Cir.), cert. denied, 328 U.S. 865, 66 S.Ct. 1372, 90 L. Ed. 1636 (1946), was a suit on behalf of a supplier under section 1 of the Miller Act [26] against a government contractor and his surety to recover the price of supplies which had been delivered to a sub-contractor. The general contractor impleaded the sub-contractor and the latter counterclaimed against both the general contractor and the supplier. The court stated that the sub-contractor's claim did not arise under the Miller Act and dismissed the counterclaim.[27] As a subsequent decision points out, the reason for the dismissal was not the "special statutory" nature of the Miller Act proceeding, as Montecatini contends, but the absence of subject matter jurisdiction over the counterclaim. United States v. Paul Tishman Co., 32 F.R.D. 223, 226 (E.D.N.Y. 1963).

In sum, none of these authorities is in point. Appellee has failed to establish any general prohibition against permissive counterclaims in special statutory proceedings. Furthermore, the only cited decision which has taken up the issue in an action under section 146 or its predecessors supports the position of the appellant Ziegler.

In Michigan Tool Co., Inc. v. Drummond, 33 F.Supp. 540 (D.D.C. 1938), plaintiff brought an action under the predecessor of section 146 [28] to review a decision of the Examiner of Interferences awarding priority of invention

24. Act of March 2, 1863, ch. 67 §§ 3, 4, 12 Stat. 698, as amended. Presently codified, as amended, at 31 U.S.C. §§ 231, 232 (1970).

25. 29 U.S.C. § 107 (1970).

26. 40 U.S.C. § 270a (1970).

27. A second counterclaim against the general contractor was dismissed on other grounds. 65 F.Supp. at 527.

28. 35 U.S.C. § 63 (formerly codified at Revised Statutes § 4915).

to the defendant. Defendant counterclaimed for infringement. Upon plaintiff's motion to dismiss the counterclaim, our district court ruled as follows:

> The counterclaim under consideration is a *permissive* counterclaim within the meaning of Rule 13(b)
>
> . . . .
>
> . . . .
>
> The court has jurisdiction to hear and determine the counterclaim and jurisdiction of the parties and, in view of the Federal Rules of Civil Procedure cited, there is *no discretion* to strike it. (Emphasis added.)

*Id.* at 542.

We think that the district court's holding in *Michigan Tool* was required by the modern principles of civil procedure discussed at the beginning of this opinion. Judicial economy is best served by resolving as many disputes as possible in a single proceeding. Montecatini attempts to distinguish *Michigan Tool* on the ground that it involved a counterclaim arising under a federal statute (patent infringement) whereas Ziegler's is a non-Federal claim. We do not see the significance of this distinction. The policy of judicial economy is equally compelling regardless of the basis for the court's subject matter jurisdiction.

■ We hold, therefore, that a counterclaim, whether permissive or compulsory, may be asserted by a section 146 defendant to the same extent as in any other civil action governed by the Federal Rules, subject to the requirements of the doctrine of exhaustion of administrative remedies. We recognize, of course, that a counterclaim might unduly compound the labyrinthian complexity of some section 146 actions. This contingency is fully anticipated by Rule 42(b), however, which authorizes the court to order the separate trial of a counterclaim "in furtherance of conven-ience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." See McFarlane v. Resinite Corp., 273 F.Supp. 224 (N.D. Ill. 1967); Michigan Tool Co., Inc. v. Drummond, 33 F.Supp. 540, 542 (D.D. C. 1938).

## II.

■ Even though we find that there is no prohibition against permissive, non-Federal counterclaims in section 146 proceedings, there remains the question of whether our district court has jurisdiction of the subject matter of the Ziegler counterclaim. Montecatini argues that it does not. Appellant Ziegler takes the opposite position, suggesting at least four different bases for subject matter jurisdiction. Because we conclude that the counterclaim falls within the general jurisdiction of the district court in its capacity as a local court for the District of Columbia, we do not reach the other jurisdictional theories presented by the appellant.[29]

■ Prior to the District of Columbia Court Reorganization Act of 1970,[30] the local jurisdiction of our district court was defined by D.C.Code § 11–521 (1966):

> (a) Except in actions or proceedings over which exclusive jurisdiction is conferred by law upon other courts in the District, the United States District Court for the District of Columbia, in addition to its jurisdiction as a United States district court and to any other jurisdiction conferred by law, has all the jurisdiction possessed and exercised by it on January 1, 1964, and has original jurisdiction of all:
>
> (1) civil actions between parties, where either or both of them are resident or found within the District; and

---

29. It is common ground that jurisdiction of the counterclaim cannot be based upon 28 U.S.C. § 1332 (diversity of citizenship) because both parties are aliens. Paragraph 1 of Ziegler Answer; Appellee's Brief at 26.

30. Act of July 29, 1970, Pub.L. No. 91–358, 84 Stat. 473.

(2) offenses committed within the District.

The parties are in agreement as to the applicability of this statute but they differ as to the meaning of the words "found within the District." Montecatini argues that neither party is a resident of or found within the District of Columbia.[31] Ziegler, on the other hand, contends that Montecatini is "found within the District" by reason of its having brought this suit here under section 146.[32] We agree with Ziegler.

This issue was before us once before in North Branch Products, Inc. v. Fisher, 179 F.Supp. 843 (D.D.C.), rev'd, 109 U.S.App.D.C. 182, 284 F.2d 611 (1960), cert. denied, 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961). In that case, the plaintiff brought an action in the district court seeking a declaration that it was the sole owner of certain patents and patent applications then held in the name of the defendant, an employee of the plaintiff. The defendant-employee filed an answer to the complaint in which he included a counterclaim requesting affirmative relief against the plaintiff. Subsequently, the defendant moved to quash the summons and to dismiss the complaint on the ground that the district court lacked jurisdiction of both his person and the subject matter. The district court denied the motions, holding that the defendant, by invoking the court's jurisdiction in his counterclaim, had submitted his person to the jurisdiction of the court, thereby waiving any objection to service of process. In addition, the court held that the complaint stated a claim within its general original jurisdiction:

> As has been indicated above, this case cannot be brought within the categories of Federal jurisdiction based on diversity of citizenship, or that founded on the patent laws. Every United States District Court, however, is a court of general original jurisdiction in respect to cases and controversies arising within Federal areas, or Federal reservations as they are technically known, that are geographically located within the district for which the court sits. Since the entire District of Columbia is a Federal area, this Court has been given general jurisdiction over cases and controversies between parties, "both or either of which shall be resident or be found within said district . . . ." (Footnote omitted.)

179 F.Supp. at 846, citing D.C.Code § 11–306 (1951) (predecessor of § 11–521). After concluding that it had both personal and subject matter jurisdiction, the court, on its own motion, dismissed the action under the doctrine of *forum non conveniens*. We reversed the latter ruling but sustained the district court's jurisdiction as to both the person and the subject matter. 284 F.2d at 614–615. With respect to subject matter jurisdiction, our opinion simply stated that an action "to determine the title or ownership [as between the parties] of patents" is within the "common-law equity jurisdiction of our District Court." Except for the brief reference which appears in the excerpt from the district court's opinion quoted above, neither our opinion nor that of the district court specifically addressed the requirement that "either or both" of the parties be a resident of or found within the District of Columbia.[33] We did take up the question in a subsequent case, however, and there stated expressly what was implicit in our *North Branch* decision:

> The District of Columbia statute provides that the District Court here shall have cognizance "of all cases in law and equity between parties, both or either of which shall be resident or be found within said district." [De-

---

31. Appellee's Brief at 19.

32. Appellant's Brief at 18–20.

33. The question of whether this requirement is subject matter jurisdictional or merely a rule of venue has not been raised in the briefs. Since we conclude that Montecatini was "found within the District" in any event, we need not consider and we do not decide this question.

fendant] came into the District to file a civil action concerning its property. It continued to prosecute that action. It appointed and maintained here an attorney in fact, who was authorized to accept service of all notices and process on its behalf for such proceedings between it and the Attorney General and "Treasurer of the United States" . . . . *We think the institution and prosecution of a civil action in the court here clearly establishes the presence of the* [*defendant*] *here.* It voluntarily subjected itself to the jurisdiction of the court; it could not do so *in absentia.* So we think [the defendant] was clearly found here. (Footnotes omitted; emphasis added.)

Kelberine v. Societe Internationale, 124 U.S.App.D.C. 257, 363 F.2d 989, 993 (1966) [citing D.C.Code § 11–306 (1961), later appearing in D.C.Code § 11–521 (1966)], cert. denied, 385 U.S. 989, 87 S.Ct. 595, 596, 17 L.Ed.2d 450 (1966). Montecatini attempts to distinguish *Kelberine,* and particularly directs our attention to the following passage in the same opinion:

> We intend this ruling to be no broader than the case. We hold that, if a foreign corporation comes into the District of Columbia for the purpose of filing and prosecuting in the District Court a suit concerning certain property, it cannot by restricting the authority of its resident agent, immunize itself against suit in that same court involving that same property.

*Id.* at 993–994. Montecatini argues that Ziegler's counterclaim does not concern the "same property" as that which is the subject of the suit commenced by it under section 146, and that, therefore, Montecatini is not "found within the District" so as to give the district court jurisdiction of Ziegler's counterclaim. Happily, we need not become entangled in such metaphysics, because the "same property" limitation set down in *Kelberine* has no application in the instant case. In *Kelberine,* a suit was filed against a litigant in the district court, not by another party to the pending suit, but by a stranger to the litigation. For that reason we restricted our holding to the situation in which the non-party's claim concerns the same property as to which his adversary has already invoked the jurisdiction of the district court.

The present appeal arises in a significantly different procedural setting. The claim at issue is pleaded as a counterclaim by a party defendant in the same action which Montecatini has instituted in the district court. Under these circumstances, Montecatini will not be heard to say it is not "found within the District." Since there is no attempt to subject the plaintiff to suits by strangers to the litigation, there is no need for the protective "same property" rule enunciated in *Kelberine.* One who invokes the jurisdiction of our district court against an adversary cannot expect at the same time to be shielded from the claims of his opponent.

[redacted] We hold, therefore, that one who commences and prosecutes a civil action in the district court for the District of Columbia is "found within the District" within the meaning of D.C. Code § 11–521 for purposes of any counterclaim by his adversary, whether or not it involves the same subject matter as the main claim.

As we have stated, neither party disputes the applicability of section 11–521 on the question of subject matter jurisdiction. We note, however, that although the suit was commenced by Montecatini prior to the effective date of the District of Columbia Court Reorganization Act of 1970, Ziegler's counterclaim was not interposed until after that date.[34] D.C.Code § 11–501(1) (Supp. V 1972) is a transitional provision which continues the local jurisdiction of the district court as to "[a]ny civil action or

34. The effective date was February 1, 1971. D.C.Code, Note preceding section 11–101 (Supp. V 1972). Montecatini filed its complaint on November 18, 1969. Ziegler filed his counterclaim on March 29, 1971.

[redacted]

other matter begun in the court before the effective date of the District of Columbia Court Reorganization Act of 1970." This raises the question of whether the counterclaim is a "matter begun" before the effective date by relation back to the date of the complaint. We do not decide that question, however, because another transitional provision clearly embraces the Ziegler counterclaim. Section 11–501(4) continues the local jurisdiction of the district court as to "[a]ny civil action [with certain exceptions not pertinent here] begun in the court during the thirty month period beginning on such effective date wherein the amount in controversy exceeds $50,000." According to the allegations of Ziegler's counterclaim, which are controlling as to the amount in controversy, the amount of his injury is "believed to amount to many millions of dollars." [35] Since the counterclaim was filed within the prescribed thirty-month period, we conclude that the district court's jurisdiction of the counterclaim was not impaired by the 1970 Act.

Reversed and remanded.

---

35. Paragraph 32 of Ziegler Answer.