**HERCULES INCORPORATED and Hercules International Trade Corporation, Plaintiffs,**

v.

**DYNAMIC EXPORT CORPORATION, Defendant,**

and

**H. Mottahedan & Company, Additional Plaintiff on Counterclaims.**

**No. 75 Civ. 319 (JMC).**

United States District Court, S. D. New York.

April 8, 1976.

Anderson, Russell Kill & Olick, P. C., New York City (Walter S. Rowland, Wilmington, Del., Nicholas L. Coch and Jerold Oshinsky, New York City, of counsel), for plaintiffs.

Cadwalader, Wickersham & Taft, New York City (John J. Walsh and Richard J. Wiener, New York City, of counsel), for defendant and additional plaintiff on counterclaims.

## MEMORANDUM DECISION

CANNELLA, District Judge:

This is a motion pursuant to Rules 12(b)(1) and (6), of the Federal Rules of Civil Procedure, for judgment dismissing the counterclaims brought by defendant Dynamic Export Corporation ["Dynamic"] and H. Mottahedan & Company ["HMC"], additional plaintiff on the counterclaims. The fifth, sixth and seventh counterclaims are dismissed as to HMC; in all other respects the motion is denied.

### FACTS

In their complaint plaintiffs allege that on January 1, 1969, an agreement was entered into between plaintiff Hercules Incorporated ["Hercules"] and Dynamic whereby Hercules agreed to appoint the defendant distributor of certain of its chemical products in Iran and Dynamic agreed to use its best efforts to develop and increase the sale of those products there. The chemicals involved were technical Toxaphene, Toxaphene 90% solution and Hercules' trademarked Toxaphene-DDT 4:2 formulation. Under the distributorship agreement, sales of these chemicals to Dynamic were made by plaintiff Hercules International Trade Corporation ["HITCO"] on behalf of Hercules.

On December 28, 1973, January 21, 1974 and February 7, 1974, insecticide having a

total value of $196,958.39 [1] was allegedly sold to Dynamic pursuant to the agreement and delivered according to its instructions. This amount, less commission and credits, has never been tendered by defendant and is presently due and owing to Hercules and HITCO, due demand having been made. Plaintiffs sue herein to recover this sum. Jurisdiction is founded upon diversity of citizenship.[2]

In its answer, Dynamic admits execution of the distributorship agreement and receipt of 70,000 gallons of Toxaphene insecticide between December 1973 and February 1974. It alleges, however, that in executing the above agreement and at all times thereafter, Dynamic, with plaintiffs' knowledge, was acting on HMC's behalf. In fact, the affidavits and letters submitted by plaintiffs as well as defendant indicate that HMC actively participated in all of the transactions alleged herein. On this basis, HMC is joined as additional plaintiff on the counterclaims, in which it is affirmatively alleged that the transactions sued upon actually involved plaintiffs' offer to sell and Dynamic and HMC's agreement to purchase 194,500 gallons of Hercules' Toxaphene products. This agreement is evidenced by correspondence among the parties exchanged between the dates of August 30, 1973 and November 30, 1973. Thus, the delivery of only 70,000 gallons is said to have constituted a breach of this contract and resulted in damage to both HMC and Dynamic. These allegations form the basis for counterclaims one through four.

Dynamic further alleges that the distributorship agreement, as modified by HIT-CO's letter dated October 17, 1973,[3] contained the following provisions:

a) HMC was to receive its Toxaphene in red, white and red colored drums carrying the Hercules label and emblem. Such drums were not to be used to meet the requirements of third parties;

b) Hercules would increase the price of Toxaphene/DDT 4:2 formulation to third parties in Iran by a minimum of ten percent (10%) and pay HMC and Dynamic one-half of the mark-up;

c) Hercules would pay Dynamic and HMC a commission of five percent (5%) when sales of technical Toxaphene and Toxaphene 90% solution were made directly to third parties by Hercules.

Each of the above provisions has allegedly been breached by plaintiffs, such breaches forming the basis for the fifth through seventh counterclaims.

## DISCUSSION

*Is Dynamic the proper party plaintiff on the counterclaims?*

■ The first issue raised by plaintiffs on this motion is whether the counterclaims are properly raised by Dynamic. Of course, under Rules 13(a) and (b), Fed.R.Civ.P., a defendant may by way of counterclaim in a pending action assert any and all claims that he has against the plaintiff. *See Montecatini Edison, S.P.A. v. Ziegler,* 159 U.S. App.D.C. 19, 486 F.2d 1279 (1973). Plaintiffs maintain, however, that Dynamic is not the real party in interest on the coun-

1. It appears that this is the value of a total of 78,140 gallons of different chemicals produced by Hercules and allegedly delivered to Dynamic on the dates mentioned above.

2. Hercules is incorporated under the laws of Delaware with its principal place of business in Wilmington, Delaware. HITCO, a subsidiary of Hercules, is organized under the laws of the Bahamas with its principal place of business in Wilmington, Delaware. Dynamic is a New York corporation doing business principally in New York City. HMC, sought to be joined by Dynamic as additional plaintiff on the counterclaims, is an Iranian business organization with its principal place of business in Teheran, Iran.

3. This letter was not sent to Dynamic, signatory of the January 1, 1969 agreement, but to HMC, per its director, Dr. H. Mottahedan. The relationship between Dynamic and HMC with regard to the distributorship arrangement is discussed *infra.*

terclaims and is for that reason barred from asserting them.[4]

▮ A brief examination of Rule 17(a), Fed.R.Civ.P. and the substantive law of New York will suffice to dispose of this argument. The Rule states that "[e]very action shall be prosecuted in the name of the real party in interest. . . . [A] party with whom or in whose name a contract has been made for the benefit of another . . . may sue in his own name . . . ." Professor Moore has stated that this simply means that "[a]n action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced." 3A J. Moore, *Federal Practice* ¶ 17.07 at 221 (2d ed. 1974). Where, as here, no federal right is involved, the law to be applied is state substantive law. *Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.,* 382 F.2d 830, 833 (6th Cir. 1967); 3A J. Moore, *Federal Practice* ¶ 17.07 at 224 (2d ed. 1974). New York law allows an action on a contract made in the name of an agent to be brought either by the principal or the agent. *Weniger v. Union Center Plaza Associates,* 387 F.Supp. 849, 855 (S.D.N.Y. 1974) (Cannella, J.); *Shirai v. Blum,* 239 N.Y. 172, 182, 146 N.E. 194, 197 (1924); *Ludwig v. Gillespie,* 105 N.Y. 653, 11 N.E. 835 (1887); *Considerant v. Brisbane,* 22 N.Y. 389 (1860); *Helman v. Dixon,* 71 Misc.2d 1057, 338 N.Y.S.2d 139, 142–43 (Civil Court Queens County 1972). *See* N.Y.C. P.L.R. § 1004 (McKinney 1963). Since Dynamic was, at the very least, an agent for HMC in the transactions alleged herein, it is not disqualified by the real party in interest rule from asserting the instant counterclaims.

### Is joinder of HMC proper under the federal rules?

Dynamic seeks to join HMC as an additional plaintiff on the counterclaims herein. Subdivision (h) of Rule 13, Fed.R.Civ.P. governs joinder of parties in situations such as the one presently before the Court. As originally promulgated in 1937 the Rule provided that additional parties might be brought in "as defendants as provided in these rules." In 1966 it was amended to read as follows:

> (h) *Joinder of Additional Parties.* Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20.

▮ This amendment makes clear that additional parties *plaintiff* as well as additional parties defendant to a counterclaim may be joined as long as they are joined in accordance with Rules 19 and 20.[5] *Lanier Business Prods. v. Graymar Co.,* 342 F.Supp. 1200, 1202–03 (D.Md.1972); 3 J. Moore, *Federal Practice* ¶ 13.39 at 13.–991 (2d ed. 1974). Aside from considerations of jurisdiction and venue, the only limitation which Rule 20 places upon permissive joinder of plaintiffs is that the rights asserted arise out of the same transaction or occurrence or series of transactions or occurrences and that a common question of law or fact is presented.[6] *See* 3A J. Moore, *Federal Practice* ¶ 20.05 at 2772–73 (2d ed. 1974).

▮ Stated in general terms, the main purpose of Rule 13(h) is to dispose of an

---

**4.** Insofar as counterclaims one through four are concerned, this contention is so frivolous as to border on the absurd. Could the law hold a party liable under a contract for the purchase of goods, yet deny that party the right to recover for his adversary's breach of that self-same contract? However, as a colorable argument is raised as to the fifth, sixth and seventh counterclaims, the Court perforce must deal with the issue.

**5.** This latter requirement is disjunctive. The joinder rule applicable to the instant situation is Rule 20.

**6.** *Permissive Joinder of Parties.*

(a) *Permissive Joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. . . .

Rule 20, Fed.R.Civ.P.

action in its entirety and grant complete relief to all concerned parties. *See Aldens, Inc. v. Packel,* 524 F.2d 38, 51 (3d Cir. 1975). Consequently, courts should construe the rule liberally in an effort to foster judicial economy and avoid multiplicity of litigation. *United Artists Corp. v. Masterpiece Prods., Inc.,* 221 F.2d 213, 217 (2d Cir. 1955); *Lesnik v. Public Indus. Corp.,* 144 F.2d 968, 973 (2d Cir. 1944); *Lanier Business Prods. v. Graymar,* 342 F.Supp. at 1202. Insofar as the rights asserted by HMC are identical to those asserted by Dynamic on its counterclaims, they clearly satisfy the liberal requirements of Rules 13(h) and 20.

*Is there jurisdiction over the counterclaims?*

 It is the opinion of this Court that although proper under Rule 20, the joinder of HMC as a plaintiff on the counterclaims destroys diversity jurisdiction. HMC, counterclaim-plaintiff, and HITCO, counterclaim-defendant, are both aliens. The presence of aliens on both sides of a controversy will defeat diversity jurisdiction. *E. g., Merchants' Cotton Press and Storage Co. v. Ins. Co. of North America,* 151 U.S. 368, 385–86, 14 S.Ct. 367, 372–73, 38 L.Ed. 195, 204–05 (1894); *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975); *Ed and Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.,* 506 F.2d 757, 758 (5th Cir. 1975). In the face of this doctrine, counterclaimants Dynamic and HMC present an ingenious argument. They assert that 28 U.S.C. § 1332(c), deeming a corporation "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business," is applicable to foreign corporations which have their principal place of business within the United States. This being the case, HITCO should be considered a citizen of Delaware, where it has its principal place of business, and not the Bahamas, where it is incorporated. The alignment of the parties on the counterclaims would then be an alien, HMC, and a citizen of New York, Dynamic, versus two citizens of Delaware, Hercules and HITCO. Although this argument may have surface appeal, it is neither supported by

the case law nor consistent with the purpose of Section 1332(c).

Prior to 1958 an alien corporation, for purposes of diversity jurisdiction, was considered a citizen solely of the foreign state in which it was incorporated. *E. g., Barrow S.S. Co. v. Kane,* 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1898); *National S.S. Co. v. Tugman,* 106 U.S. 118, 120–21, 1 S.Ct. 58, 59–60, 27 L.Ed. 87, 88–89 (1882); 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3628 at 823 (1975). Since the enactment of § 1332(c) in 1958 most federal courts have held it inapplicable to foreign corporations, leaving the traditional rule in effect. *Union Marine & General Ins. Co. v. American Export Lines, Inc.,* 274 F.Supp. 123, 125 n. 1 (S.D.N.Y. 1966); *Tsakonites v. Transpacific Carriers Corp.,* 246 F.Supp. 634, 641 (S.D.N.Y.1965), *aff'd,* 368 F.2d 426 (2d Cir.), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434 (1967); *Chemical Transp. Corp. v. Metropolitan Petroleum Corp.,* 246 F.Supp. 563 (S.D.N.Y.1964) (all per Cooper, J.); *Mazzella v. Pan Oceana A/S Panama,* 232 F.Supp. 29, 31 n. 1 (S.D.N.Y.1964) (Bonsal, J.); *Eisenberg v. Commercial Union Assurance Co.,* 189 F.Supp. 500 (S.D.N.Y.1960) (Dimock, J.). Directly in point are *Tsakonites* and *Mazzella, supra,* in which application of § 1332(c) in the manner proposed by Dynamic and HMC would have created diversity jurisdiction between an alien corporation with its principal place of business within the United States and another alien. On the other hand, courts confronting this issue more recently have found Section 1332(c) applicable to foreign corporations whose principal place of business is located in the United States. *Bergen Shipping Co. v. Japan Marine Serv., Ltd.,* 386 F.Supp. 430, 431–34 (S.D.N.Y.1974) (Conner, J.); *Jerro v. Home Lines, Inc.,* 377 F.Supp. 670 (S.D.N.Y.1974) (Gurfein, J.); *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001, 1005–07 (N.D.Ill.1973). Both the *Jerro* and *Southeast* courts, however, applied the section to *defeat* diversity jurisdiction between a citizen of a state and an alien corporation with its principal place of business in that state. This application of the subsection is in consonance with its avowed

purpose, the restriction of diversity jurisdiction.[7] S.Rep. No. 1830, 85th Cong., 2d Sess. (1958); H.R.Rep. No. 1706, 85th Cong., 2d Sess. (1958). *See also,* 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3624 at 779–80 (1975); 1 J. Moore, *Federal Practice* ¶ 0.77[1.–2] at 717.-3–.6 (2d ed. 1974). "By enacting § 1332(c) Congress sought to preclude any technical finding of diversity, when, in fact, no such diversity existed." *Southeast Guaranty, supra* at 1007.[8]

▆ For the purposes of the case at bar, however, we need not determine whether § 1332(c) is, in fact, applicable to a foreign corporation. For even assuming that it is, it cannot be read to deem such a corporation a citizen of either the jurisdiction in which it is incorporated *or* the state in which it has its principal place of business, whichever it may choose. The statute creates a principal of dual citizenship, not one of alternative citizenship. Thus, where a corporation is incorporated in state A and has its principal place of business in state B and the adverse party is a citizen of either A or B, diversity is lacking. *Bank of California Nat'l Ass'n v. Twin Harbors Lumber Co.,* 465 F.2d 489 (9th Cir. 1972); *Wolgin v. Atlas United Financial Corp.,* 397 F.Supp. 1003, 1008 (E.D.Pa.1975); *Inland-Western Inv. Co. v. Winkler Realty Corp.,* 65 F.R.D. 515 (S.D.N.Y.1975) (MacMahon, J.); 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3624 at 781 (1975). Likewise, assuming *arguendo* that § 1332(c) is applicable to alien corporations, when an alien corporation with its principal place of business in state A is adverse to either an alien or a citizen of state A, diversity would be lacking. *See Jerro, supra; Southeast, supra* ; 13 Wright, Miller &

Cooper, *Federal Practice and Procedure: Jurisdiction* § 3628 at 823–29 (1975); 1 J. Moore, *Federal Practice* ¶ 0.77[2.–3] at 717.-47–.48. To the extent that this is inconsistent with the dicta in *Bergen, supra,* we decline to follow it.

*Ancillary jurisdiction over counterclaims*

Insofar as joinder of HMC in this action destroys diversity, Dynamic and HMC seek to invoke the doctrine of ancillary jurisdiction as an alternative basis for jurisdiction over the counterclaims.

▆ Where a federal court has jurisdiction over the main cause of action and the parties thereto, it also has jurisdiction over any proceedings ancillary to that action, regardless of the citizenship of the parties or the existence of a federal question in the ancillary suit. *Dugas v. American Sur. Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720, 727–28 (1937); *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1205 (5th Cir. 1975); *United States v. Franklin Nat'l Bank,* 512 F.2d 245, 249 (2d Cir. 1975); *Pipeliners Local Union No. 798 v. Ellerd,* 503 F.2d 1193, 1198 (10th Cir. 1974). Because it is closely related to the subject matter of the main action, a compulsory counterclaim under Rule 13(a), Fed.R.Civ.P., is within the court's ancillary jurisdiction and an independent basis for federal jurisdiction is therefore unnecessary. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506, 41 L.Ed.2d 243, 247 (1974); *Moore v. New York Cotton Exch.,* 270 U.S. 593, 609–10, 46 S.Ct. 367, 370–71, 70 L.Ed. 750 (1926); *United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1081 (2d Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *Ivy Broadcasting Co. v. American*

---

**7.** The application pressed by counterclaimants would have the opposite effect of enlarging diversity jurisdiction.

**8.** At this juncture it should be noted that the rationale behind holding § 1332(c) applicable to alien corporations, that it is fair to infer that a foreign corporation with its principal place of business in the United States has adopted that state as its residence and therefore was not

subject to local prejudice in that state, 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3628 at 825–26 (1975), and cases cited therein, is wholly inapplicable to the instant situation, wherein an alien corporation with its principal place of business within the United States seeks to use that place of business to invoke the federal court's diversity jurisdiction over another alien.

*Tel. & Tel. Co.*, 391 F.2d 486, 488 (2d Cir. 1968); *Dery v. Wyer*, 265 F.2d 804, 807–08 (2d Cir. 1959); *United Artists Corp. v. Masterpiece Prods., Inc.*, 221 F.2d 213, 216 (2d Cir. 1955); *Lesnik v. Public Indus. Corp.*, 144 F.2d 968 (2d Cir. 1944). Furthermore, where a compulsory counterclaim is pleaded, ancillary jurisdiction extends to additional parties. This means that persons brought into an action as parties to a compulsory counterclaim will come under the subject matter jurisdiction of the court regardless of an ensuing lack of diversity. *Pipeliners Local Union No. 798 v. Ellerd, supra; United States v. Heyward-Robinson Co., supra; Dery v. Wyer, supra; United Artists Corp. v. Masterpiece Prods., Inc., supra; Lesnik v. Public Indus. Corp., supra.*

■ By way of contrast, permissive counterclaims are not sufficiently related to the subject matter of the main action to come under the court's ancillary jurisdiction. *Aldens, Inc. v. Packel*, 524 F.2d 38, 52 (3d Cir. 1975); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 339 (7th Cir.), cert. denied, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *Kleban Eng. Corp. v. Caldwell*, 490 F.2d 800, 802 (5th Cir. 1974); *United States v. Heyward-Robinson Co.*, 430 F.2d at 1080; *Lesnik v. Public Industrial Corp.*, 144 F.2d at 976 n. 10; *United States v. Shafter*, 49 F.R.D. 164 (S.D.N.Y.1969), aff'd per curiam, 424 F.2d 281 (2d Cir. 1970). They must therefore have their own basis of federal jurisdiction, *i. e.*, third parties may not be added for adjudication of permissive counterclaims if their presence would destroy diversity. *Chance v. County Bd. of School Trustees*, 332 F.2d 971 (7th Cir. 1964); *McNaughton v. New York Cent. R. R.*, 220 F.2d 835, 840 (7th Cir. 1955); *Jacobs v. United States*, 367 F.Supp. 1275 (D.Ariz.1973); *Markus v. Dillinger*, 191 F.Supp. 732 (D.C.Pa.1961); *Non-Ferrous Metals, Inc. v. Saramar Aluminum Co.*, 25 F.R.D. 102 (D.C.Ohio 1960).[9] Thus, the issue before us is whether Dynamic's counter-

claims are permissive or compulsory under Rule 13.

### Are the counterclaims permissive or compulsory?

Rule 13(a) directs that a pleading shall state all compulsory counterclaims and defines such a counterclaim as "any claim which at the time of serving the pleading the pleader has against any opposing party [which] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Rule 13(a), Fed.R.Civ.P. All other counterclaims are permissive. *See* Rule 13(b), Fed.R. Civ.P. In keeping with the liberal philosophy of the federal rules, the courts have given to the terms "transaction" and "occurrence" a broad and flexible interpretation. *Moore v. New York Cotton Exch.*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Pipeliners Local Union No. 798 v. Ellerd, supra; United States v. Heyward-Robinson Co., supra; United Artists Corp. v. Masterpiece Prods., Inc., supra.* The standards suggested by most courts in considering the compulsory or permissive nature of specific counterclaims are as follows: (1) Are the issues of fact or law raised by the claim and counterclaim largely the same?; (2) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?; (3) Is there any logical relation between the claim and the counterclaim?; and (4) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? *See, e. g., Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d at 1198–99; 6 Wright and Miller, *Federal Practice and Procedure: Civil* § 1410 at 42 (1971) and cases cited therein.

■ Of the above standards, by far the most consistently applied is the logical relation test. *See, e. g., Nishimatso Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975); *Pipeliners Local Union No. 798 v. Ellerd, supra; Revere Copper & Brass,*

---

9. In addition, the concept of federal jurisdiction over pendent parties in diversity cases appears to have been rejected sub silentio in *Zahn v.*

*International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1974).

*Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709 (5th Cir. 1970); *Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970); *Diamond·v. Terminal Ry. Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970). Applying this standard, the Court concludes that counterclaims one through four are compulsory counterclaims. They not only arise out of the same contract as plaintiffs' claim for relief,[10] but are based on the same incidents as give rise to that claim. Plaintiffs allege the delivery of some 78,140 gallons of insecticide. Dynamic admits such such a delivery (although the amount delivered is in controversy) but counters that this was in breach of a contract for the delivery of a much larger amount, 194,500 gallons. These claims are so intimately related as to satisfy even the strictest application of the logical relation test.

On the other hand, counterclaims five through seven arise out of the separate, albeit related agreement to appoint Dynamic distributor of Hercules products in Iran. The Court concludes that these are merely permissive counterclaims. They do not involve any issues of fact or law raised by the plaintiffs' claim, nor will there be any substantial overlap of evidence. Moreover, although the alleged sales agreement may have arisen out of the relationship created by the distributorship agreement, a claim for breach of that agreement is not so logically related to an action for goods sold and delivered under the agreement that it should be deemed a compulsory counterclaim. *Dundee Wine & Spirits, Ltd. v. Glenmore Distilleries Co.*, 238 F.Supp. 283, 289–90 (E.D.N.Y.1965). *See 2001, Inc. v. Novaglas Corp.*, 60 F.R.D. 649 (E.D.N.Y. 1973) (Weinstein, J.). Finally, it appears that the provisions upon which the fifth and sixth counterclaims are based were in the process of being modified at the time the sales agreement was negotiated.

Where, as here, a defendant attempts to add a person for purposes of adjudicating both compulsory and permissive counterclaims, if diversity is destroyed and no federal question is presented, the party may be added under the court's ancillary jurisdiction over the compulsory counterclaims but may not be added for purposes of the permissive counterclaims. *Markus v. Dillinger*, 191 F.Supp. 732 (E.D. Pa.1961). Thus, the Court retains ancillary jurisdiction over HMC with respect to counterclaims one through four, while the fifth through seventh counterclaims will not support their addition as a party to this action.

## CONCLUSION

The Court concludes that all of the counterclaims are properly interposed by Dynamic in this action. Counterclaims one through four are compulsory and will support the joinder of HMC as a party thereto regardless of the ensuing lack of diversity. However, counterclaims five, six and seven are permissive counterclaims and must be dismissed as to HMC, there being no independent basis of federal jurisdiction to support them.

Accordingly, the Court hereby orders the joinder of HMC as additional plaintiff on counterclaims one through four.

SO ORDERED.

**10.** Numerous courts have found counterclaims arising out of the same contract as the plaintiffs' claim to be compulsory. *E. g., Platt & Munk Co. v. Republic Graphics, Inc.*, 315 F.2d 847 (2d Cir. 1963); *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43 (2d Cir. 1961); *Martin v. Morse Bougler Destructor Co.*, 221 F.2d 218 (2d Cir. 1955); *James B. Day & Co. v. Reichhold Chemicals, Inc.*, 60 F.R.D. 387 (N.D. Ill.1973); *King Bros. Prod., Inc. v. RKO Teleradio Pictures, Inc.*, 208 F.Supp. 271, 275 (S.D.N. Y.1962).