The LANE COMPANY, a Washington Limited Partnership, By and Through Joseph C. LANE, Jr., its general partner, Appellant (Plaintiff),

v.

BUSCH DEVELOPMENT, INC., a Utah Corporation, Appellee (Defendant).

No. 5807.

Supreme Court of Wyoming.

April 22, 1983.

Rehearing Denied May 18, 1983.

F. Scott Boundy and G. Scott Greenburg of Shidler, McBroom, Gates & Baldwin, Seattle, Wash., and Ward A. White, of Guy, Williams, White & Argeris, Cheyenne, for appellant.

Reed L. Martineau and Mark A. Larsen of Snow, Christensen & Martineau, Salt Lake City, Utah, and Gary R. Scott of Hirst & Applegate, Cheyenne, for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

BROWN, Justice.

Appellant The Lane Company (Lane) filed suit against appellee Busch Development, Inc. (Busch) on a contract. Lane alleged that, because of an agreement between Lane and Busch, Busch owed amounts which Lane had paid for grading and utility work when it was constructing a LaBelle's store in a Cheyenne shopping center. Busch counterclaimed, alleging that the LaBelle's store encroached on Busch's property. The court granted a summary judgment for Lane on Busch's counterclaim. It also granted a summary judgment for Busch against Lane on Lane's complaint, which it appeals.

We will affirm.

The single issue is whether the granting of a summary judgment to Busch because of a previous suit between the parties was proper. The previous suit, *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65 (1982), involved a dispute over landscaping at the same shopping center which is involved in this suit. Busch's motion for summary judgment against Lane in this case alleged that Lane's action was barred because of the prior suit between the parties. Busch argues that the rule against splitting a cause of action applies in this suit. Lane argues that it did not improperly split its cause of action.[1]

"A cause of action is the fact or combination of facts which gives rise to a suit." *Duke v. Housen,* Wyo., 589 P.2d 334, 341 (1979), cert. denied, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). The general rule against splitting a cause of action is that a single wrong gives rise to one cause of action for which only one suit may be maintained, however numerous the elements of damages resulting therefrom. *Bienville Water Supply Company v. Mobile,* 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132

(1902); and *Brickel v. Chicago, Burlington and Quincy Railroad Co.,* 200 F.Supp. 240 (D.C.Wyo.1961). A multiplicity of suits should not be allowed where justice can be done in one suit. *Holly Sugar Corporation v. Fritzler,* 42 Wyo. 446, 296 P. 206 (1931). The reason for the rule is that a party should not have to be subject to multiple suits over one transaction or occurrence, or over several related transactions or occurrences. The rule also provides for judicial economy. *Gareeb v. Weinstein,* 161 N.J.Super. 1, 390 A.2d 706 (1978).

No precise rule has been laid down for determining what makes a whole cause of action. Each case is decided on its particular facts.

" * * * A cause of action is a legal concept which has no separate existence in the natural order of things. It is what * * * the Legislature and the courts, say it is. It exists to satisfy the needs of plaintiffs for a means of redress, of defendants for a conceptual context within which to defend an accusation, and of the courts for a framework within which to administer justice.

\* \* \* \* \* \*

"In more recent times, causes of action have been delineated by reference to the transaction, occurrence or wrongful act from which the litigation arises. * * * " *Retherford v. Halliburton Company,* Okl., 572 P.2d 966, 968 (1978).

This court examines a motion for summary judgment in the same light as the district court, using the same material and information as did the district court. *Fegler v. Brodie,* Wyo., 574 P.2d 751 (1978). The burden is on the moving party to demonstrate clearly that there is no genuine issue of material fact. *Dubus v. Dresser Industries,* Wyo., 649 P.2d 198 (1982).

---

1. The parties refer to splitting a cause of action. Parties no longer have to plead a cause of action; they now plead a claim for relief. However, for the purpose of this appeal only, we will treat the two terms as synonomous. This opinion will cite cases discussing splitting a cause of action and cases discussing the rule concerning counterclaims and claims for relief.

The rationale in both types of cases is the same, as is the question whether a party is barred from raising an issue because it should have been previously adjudicated. The difference between a cause of action and a claim for relief becomes more important when one is addressing the adequacy of the pleadings and whether they should be dismissed.

Busch, then, had the burden of showing that there was no issue of material fact concerning whether Lane had improperly split a cause of action. In the previous suit, Busch had first agreed with the City of Cheyenne (City) to provide landscaping in a perimeter or berm area of the shopping center. Busch then entered into a sales agreement with Pacific Cascade Corporation, which assigned its interests to Lane. The City then required Lane to post a bond to cover landscaping costs for the berm or perimeter area before it would issue a certificate of occupancy for LaBelle's. Lane paid under protest and then sued Busch and the City. In that suit, this court affirmed the trial court's finding that Busch was responsible for certain landscaping at the shopping center.

Busch argues that the first suit adjudicated a controversy over a single agreement between Busch and Lane, and that the second suit attempted to adjudicate a controversy under the same agreement. Lane claims that it instituted the first suit primarily for the benefit of the City to determine the City's right to receive payment for landscaping work. It says that the lower court's decision and this court's affirmance in the first case were based on an agreement that Busch had with the City and not on any contract between Lane and Busch.

Busch met its burden of showing that there was no material question of fact that Lane had split its cause of action. The complaint from the first action together with Lane's pretrial conference memorandum, the evidence which Lane introduced, the trial court's findings of fact and conclusions of law, and this court's opinion in the first case, show that Lane was seeking relief from its agreement under protest with the City by proving that Lane had performed all of its landscaping obligations under the writings between Lane and Busch, and that any further landscaping, specifically for the berm area, was Busch's responsibility as a developer.

The agreement between Busch and Lane consisted of a letter agreement, a real estate purchase and sale agreement with attached site plans, and a reciprocal easement agreement. Paragraph 7 of Lane's complaint in the first action specifically mentioned landscaping agreements under the reciprocal easement agreement, so that the complaint indicated that Lane was relying on the agreements between the parties to prove that Lane had not agreed with Busch to landscape the berm area.

"7. Under the August 22, 1978 REA, Lane undertook to maintain such landscaping as would be installed by Busch. At no time has either PCC or Lane agreed to install all of said landscaping required by the Commission on said real property as aforesaid."

In its pretrial conference memorandum for the first action, Lane also indicated that it was going to rely on testimony concerning the site plans which were attached to the real estate purchase and sale agreement.

"Cliff Barber * * * will testify regarding the transactions betweens [sic] the Pacific Cascade Corporation, The Lane Company and Busch Development, *as well as Busch's obligations under the original and revised site plans.*" (Emphasis added.)

At trial of the first case, Lane introduced the letter agreement, the real estate purchase and sale agreement and the reciprocal easement agreement to support its claim of rights and Busch's obligations. Finding of Fact No. 13 also shows that the trial court considered the writings between the parties to reach its ruling on Lane's landscaping obligations.

"* * * Exhibits B and C to the agreement [real property purchase and sale agreement] contain the site plan and the alternative site plan for the project. Both exhibits B and C provide:

"'Landscaping and planting for the "LaBelle's" project to be furnished and installed by Pacific Cascade Corporation.'"

Conclusion of Law No. 5 in the first case specifically ruled that Lane had fulfilled its landscaping obligations to Busch: "Lane has properly fulfilled its landscaping obligation to the City of Cheyenne, the Planning Commission, *and Busch * * *.*"

As Busch points out, in the first suit Lane relied on paragraph 5 of the site plan to show that it was not obligated to Busch to perform any landscaping in the berm area. Lane in its second suit tried to enforce its interpretation of paragraphs 3 and 4 concerning grading and utility work of the same site plan to the same real property purchase and sale agreement.

Busch also correctly points out that this court reviewed the trial court's interpretation of the writings between the parties concerning their landscaping obligations. We said in *Busch Development, Inc. v. City of Cheyenne,* supra, at 70, 71:

"As to a written agreement between Busch and Pacific [Lane's predecessor in interest], Busch argues that Pacific assumed the landscaping obligation for the berm area, and that the writings by the two parties conclusively demonstrate such an obligation. * * *

 * * * * * *

" * * * The documents taken together do not support the argument that Pacific agreed to landscape both the parking site and the berm area. We agree with the trial judge that the contract was ambiguous, and we hold that a rational basis existed for the trial court's factual finding of the parties' intent concerning landscaping."

■ Lane's argument that it instituted the first action primarily for the benefit of the City cannot be taken seriously. A contract between two parties has to show that the parties intended to benefit a third party. *Wyoming Machinery Company v. United States Fidelity and Guaranty Company,* Wyo., 614 P.2d 716 (1980). Busch's agreement with the City to landscape the berm area predated by four months Lane's attempt to obtain a certificate of occupancy. *Busch Development, Inc. v. City of Cheyenne,* supra, at 70. Busch's agreement with the City was not made so that Lane could obtain a certificate of occupancy.

Lane says that Busch is making a "compulsory 'counter-counter' claim" argument under Rule 13(a), Wyoming Rules of Civil Procedure. The rationale and test under the Federal Rules of Civil Procedure and the Wyoming Rules of Civil Procedure concerning compulsory counterclaims could be said to apply to this case. The philosophy that parties who are given the capacity to present their entire controversies should in fact do so is embodied in the Wyoming Rules of Civil Procedure, Rules 7, 8, and 13, which are patterned after similar Federal Rules of Civil Procedure. Rule 7(a), W.R. C.P., provides:

"(a) Pleadings.—There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

Rule 8(d), W.R.C.P., provides:

"(d) Effect of failure to deny.—Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

Rule 13(a), W.R.C.P., provides:

"(a) Compulsory counterclaims.—A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

■ Ordinarily, a claim which is a compulsory counterclaim under F.R.C.P. 13(a)

or W.R.C.P. 13(a), but is not brought, is thereafter barred. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). The bar is not set out in the rule, but can arise from several different theories.

"F.R.C.P. 13(a) does not itself state that the penalty for failure to bring a compulsory counterclaim is a bar to later asserting that claim, and the bar arising out of F.R.C.P. 13(a) has been variously characterized, the courts relying on doctrines of res judicata, estoppel or waiver, or both res judicata and waiver. Moreover, courts are not always clear as to whether they are denying a party's claim on the basis of the policy of F.R.C.P. 13 or res judicata." Federal Procedure, L.Ed., § 62:215, pp. 187–188 (1981).

In the first case below, Busch filed a counterclaim based on a reciprocal easement agreement between the parties, which was part of the contract between the parties. *Busch Development, Inc. v. City of Cheyenne,* supra. Using the Rule 13(a), W.R.C.P., rationale, it is arguable that in its reply to Busch's counterclaim, Lane should have included its own counterclaim concerning the grading and utility work. Wright and Miller suggest that if the claim is one which would be compulsory for a defendant under F.R.C.P. 13(a), then a plaintiff is required to assert his own counterclaim in a reply to defendant's counterclaim.

"* * * If plaintiff has a claim arising from the same transaction as the one involved in the defendant's counterclaim—a claim that would constitute a compulsory counterclaim under Rule 13(a)—he must assert it in the reply or be barred from bringing a later action on it. * * *" Wright & Miller, Federal Practice and Procedure, Civil § 1188, p. 26 (1969).

Under either the splitting of a cause of action theory or under the rationale of Rule 13(a), W.R.C.P., Lane should have raised the issues of its grading and utility claims, unless there was some good reason for its failure to do so. Here, there is no indication in the record of the first case that Lane ever made a motion to insert a counterclaim in its reply to Busch's counterclaim, or that it ever attempted to amend its original complaint.

"There is considerable authority that it is proper to state a counterclaim in a reply to a counterclaim of the opposing party, one court pointing out that, although F.R.C.P. 7(a) does not specifically provide for a counterclaim in the reply, this Rule purports only to identify permissible pleadings by their generic names. Although it has been held that a counterclaim in a reply may be a permissive counterclaim, some courts indicate that only a compulsory counterclaim should be permitted in a reply, while other courts have advised treating a counterclaim in reply as an amendment to the complaint." Federal Procedure, L.Ed., § 62.13, pp. 37, 38 (1981).

Lane appears to argue at first that it attempted before the first trial to amend its complaint to include the grading and utilities work claims. It says that Busch objected to such a motion. There is an unexecuted affidavit included in the record of the second case, which writing was filed as an attachment to an affidavit executed by an attorney for Lane in the second case. The unexecuted affidavit is by Mr. Boundy, an attorney for Lane in the first suit. The unexecuted affidavit states:

"* * * * In the course of trial preparation just prior to trial, we determined for the first time that Busch had not complied with an agreement to pay certain site costs for grading and utilities and for storm sewer connections, and sought to have the trial court make a ruling on this matter as well as other matters at issue. Busch, through its attorneys, objected to any amendment which would have allowed the court to consider that motion, and it was understood by both parties that The Lane Company/Pacific Cascade Corporation's claim for extra site costs would be the subject of a subsequent lawsuit."

However, Lane's reply brief states "no motion to amend was made by either party."

Lane argues that Mr. Boundy's affidavit is uncontroverted and that it thereby creates a material issue of fact as to the understanding of the parties to determine the grading and utility work claims at a later date. If that were the case, then it would not necessarily be barred from asserting its action under the theory that it had improperly split its cause of action.

"The rule against splitting a cause of action is primarily for the benefit of the defendant, to protect him against a multiplicity of suits, and he may agree to a splitting of the cause of action * * * and by his conduct he may be held to have waived his right to insist upon the rule, and a waiver will be presumed unless timely and proper objection is made. * * *" 1 Am.Jur.2d, Actions § 132, p. 651 (1962).

Restatement of Judgments (Second) § 26, p. 233 (1982), now provides:

"(1) When any of the following circumstances exists, the general rule of § 24 [against splitting a cause of action] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

"(a) The parties have agreed in terms or in effect that the plaintiff may split his claim or the defendant has acquiesced therein; or

"(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action * * *."

Comments to Restatement of Judgments, § 26, at pp. 234–235, provide:

"a. *Consent to or acquiescence in splitting*. A main purpose of the general rule stated in § 24 [against splitting a cause of action], is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim.

"The parties to a pending action may agree that some part of the claim shall be withdrawn from the action with the understanding that the plaintiff shall not be precluded from subsequently maintaining an action based upon it. The agreement will normally be given effect. Or there may be an effective agreement, before an action is commenced, to litigate a part of a claim in that action but to reserve the rest of the claim for another action. * * * "

"d. *Erroneous decision that formal barrier exists*. Where the court determines that the plaintiff cannot enforce a given claim or a party of it in that action but must enforce it, if at all, in another action, the judgment does not preclude the plaintiff from maintaining the other action even though it appears that the determination made in the first action was erroneous. The determination is binding between the parties under the principle of direct estoppel. * * * It is immaterial that no appeal was taken from the ruling of the court in the first action."

In *Erickson v. United States,* 159 Ct.Cl. 202, 309 F.2d 760 (1962), a tax court refused on jurisdictional grounds to decide whether interest should have been assessed against a taxpayer. The appellate court held that although the trial court might have been wrong in deciding it had no jurisdiction to hear the issue, the former suit would not bar the government from defending a suit for a refund of the interest. In *Carr v. Preslar,* 73 S.D. 610, 47 N.W.2d 497 (1951), the plaintiff had brought an action to cancel the mineral deed to defendants. Defendants sought permission to amend their answer to allege mistake, but that plaintiff should execute and deliver a royalty deed to defendants conveying the five percent royalty. Permission to make the amendment was denied and plaintiff obtained judgment on the pleadings. The appellate court held that the defendants were not precluded from bringing a subsequent action to establish their alleged five percent royalty.

The same approach holds true for the dictates of Rule 13(a), W.R.C.P. In *Bailey v. State,* 57 Hawaii 144, 552 P.2d 365 (1976), the lessors of condemned property brought an action to recover costs for the design and construction of a retaining wall. They con-

tended that the costs were consequential damages of the taking. The state had argued that the claim was in the nature of a compulsory counterclaim, and should have been pled during the condemnation action. The Hawaii Supreme Court ruled that the claim was a compulsory counterclaim. However, the appellate court noted that the trial court erroneously believed that the issue was not a compulsory counterclaim. The trial court excluded evidence about the retaining wall. The state argued that the lessors should have appealed the trial court's exclusion of the evidence concerning the wall in the initial condemnation action. The Hawaii Supreme Court ruled that a strict application of the doctrine of res judicata to omitted counterclaims could lead to harsh results when a defendant has been precluded from asserting a compulsory counterclaim because of procedural developments in a case.

> "We think that the absolute bar imposed by res judicata goes farther than necessary to effectuate the purposes of Rule 13(a). * * * We agree with the Minnesota Supreme Court that Rule 13(a) does not raise the absolute bar of res judicata but raises 'a bar created by rule * * * which logically is in the nature of an *estoppel* arising from the culpable conduct of a litigant in failing to assert a proper counterclaim.' [Citation.]" *Bailey v. State,* supra, 552 P.2d at 368.

The Hawaii court then held that estoppel would not apply to the second action since the omission of the compulsory counterclaim in the first action resulted from the trial court's exclusion of the evidence.

This court has stated that the policy against piecemeal determination of rights should not be unduly burdensome. *Hurst v. Davis,* Wyo., 386 P.2d 943 (1963). We might have been willing to accept appellant's argument that the parties had agreed to postpone part of the litigation until later, or that a material question of fact at least existed as to that issue, except that a signed, dated, and notarized copy of Mr. Boundy's affidavit was never filed with the trial court. Rule 56(e), W.R.C.P., provides:

> "(e) Form of affidavits; further testimony; defense required.—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* * * * *"* (Emphasis added.)

 Mr. Boundy's unsworn and unexecuted affidavit was not sufficient on its own or as an attachment to the affidavit of Lane's attorney in the second case. The material presented to the trial court as a basis for summary judgment should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial. *Newton v. Misner,* Wyo., 423 P.2d 648 (1967). Mr. Boundy's unsworn testimony would not have been admissible at a trial on the issue of whether the parties had agreed to allow Lane to split its cause of action. Consequently, there is no indication in the record of either the first or the second suit that Lane ever made a motion to amend its complaint or to include a counterclaim in its reply to Busch's counterclaim. There is also no evidence that the parties reached any express or implied agreement to allow Lane to pursue the grading and utilities claims at a later time. The trial court correctly granted summary judgment to Busch.

Affirmed.