# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 114

**APRIL TERM, A.D. 2020**

**August 27, 2020**

GAS SENSING TECHNOLOGY
CORPORATION, a Wyoming
Corporation d/b/a WELLDOG,

Appellant
(Defendant),

v.

NEW HORIZON VENTURES PTY
LTD, as Trustee of the Linklater Family
Trust and EWAN MELDRUM, as
Trustee of the Meldrum Family Trust,

Appellees
(Plaintiffs).

S-19-0277

*Appeal from the District Court of Albany County*
The Honorable Tori R.A. Kricken, Judge

*Representing Appellant:*
Phillip A. Nicholas, Meggan J. Nicholas, Nicholas & Tangeman, LLC, Laramie, Wyoming.  Argument by Mr. Nicholas.

*Representing Appellee New Horizon Ventures PTY LTD, as Trustee of the Linklater Family Trust:*
*Pro se.*

*Representing Appellee Ewan Meldrum, as Trustee of the Meldrum Family Trust:*
Timothy M. Stubson, Crowley Fleck PLLP, Casper, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, GRAY, JJ, and OVERFIELD, D.J..*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    New Horizon Ventures Pty Ltd, as Trustee of the Linklater Family Trust (Linklater Trust), and Ewan Meldrum, as Trustee of the Meldrum Family Trust (Meldrum Trust) (collectively "the Trusts"), sued Gas Sensing Technology Corporation d/b/a WellDog (GSTC) for payment of loans they made to GSTC to finance its oil and gas service operations in Australia.  GSTC asserted numerous affirmative defenses and counterclaims. The district court dismissed GSTC's counterclaims because it believed they unduly complicated the action.  After a trial, the jury ruled Linklater Trust had breached the implied covenant of good faith and fair dealing; therefore, GSTC was not required to pay its debt.  The jury also found Meldrum Trust had breached the implied covenant but, instead of excusing GSTC's debt, it reduced the damages GSTC owed to Meldrum Trust.

[¶2]    We reverse and remand because the district court erred by dismissing GSTC's counterclaims.  We also provide guidance regarding the jury instructions.

## ISSUES

[¶3]    The issues on appeal are:

1.  Did the district court err by dismissing GSTC's counterclaims?[1]

2.  Did the district court correctly instruct the jury?

## FACTS

[¶4]    This case presents a complex factual scenario involving many individuals and entities.  To decide the issues in this appeal, we need only generally describe the facts and GSTC's allegations.

---

[1] GSTC also asserts in its statement of the issues that the district court erred by dismissing its third-party complaint against Graeme Linklater and Ewan Meldrum in their individual capacities.  The third-party complaint stated causes of action for negligent misrepresentation and intentional/fraudulent misrepresentation, which appear to be directed primarily at Mr. Linklater.  On appeal, GSTC does not provide any analysis of how the rules of procedure apply to its third-party complaint or why the third-party claims should not be dismissed.  For example, GSTC fails to address whether Mr. Linklater and Mr. Meldrum are "opposing" parties or "coparties" in accordance with Wyoming Rule of Civil Procedure 13 and fails to even mention Wyoming Rule of Civil Procedure 14 which pertains specifically to third-party practice.  Given the lack of cogent argument on this matter, we will not further address it.  *See, e.g.*, *Gowdy v. Cook,* 2020 WY 3, ¶ 31, 455 P.3d 1201, 1209 (Wyo. 2020) (refusing to address contentions not supported by cogent argument or citation to pertinent authority) (citing *Wright v. State,* 2019 WY 49, ¶¶ 8-9, 440 P.3d 1092, 1094 (Wyo. 2019); *Hodson v. Sturgeon,* 2017 WY 150, ¶¶ 6-8, 406 P.3d 1264, 1265-66 (Wyo. 2017)).

1

[¶5]    John Pope founded GSTC in 2007 through an entity known as Blue Sky Group, Inc. GSTC is an oil and gas technical service company based in Laramie, Wyoming. It developed patented chemical sensing systems to provide commercial reservoir analysis services for coal, gas, alternative and conventional resources. GSTC provided equipment and services related to this technology to customers who used it to measure methane and carbon dioxide underground to locate coal bed methane wells. Initially, GSTC operated in the United States and Canada, particularly the Powder River Basin in Wyoming. Around 2010, GSTC decided to enter the Australian market and formed an Australian subsidiary called WellDog Proprietary Limited (WellDog).

[¶6]    GSTC and WellDog secured venture equity and debt financing from investors in the United States and Australia. One United States investor was Shell Technology Ventures, a venture capital arm of Shell Oil and Gas Company. There were two primary groups of investors from Australia. The first group was associated with Simon Ashton and included companies known as ProX Proprietary Limited and Kinabalu Australia Proprietary Limited. Kinabalu purchased shares in GSTC, and ProX loaned WellDog $4 million. The other group of Australian investors was associated with John Mactaggart and included companies known as Jontra Holdings Proprietary Limited, Associated Construction Equipment Proprietary Limited, and Brisbane Angels Group Limited. Mr. Mactaggart's companies bought stock in, and loaned money to, GSTC and/or WellDog.

[¶7]    Mr. Mactaggart introduced Graeme Linklater to Mr. Pope, and in 2012, Mr. Linklater was hired as the chief financial officer for WellDog and GSTC. Mr. Linklater was also the corporate secretary for both entities and a director of WellDog. In 2012 and 2013, Mr. Linklater did not take his full compensation. As a result, GSTC gave Linklater Trust a $137,678.35 finance note. Linklater Trust is a "personal investment vehicle" Mr. Linklater uses to pass assets to his family, and he is the director of the trustee, New Horizon Ventures Proprietary Limited. The note included a twelve percent (12%) interest rate, which increased to seventeen percent (17%) when the note was in default. Under the terms of the Linklater Trust note, GSTC was supposed to make installment payments of all accrued but unpaid interest and $5,000 in principal on the first day of each month. The final maturity date was August 22, 2017.

[¶8]    Mr. Ashton introduced Mr. Meldrum to Mr. Pope in 2011. In 2015, WellDog hired Mr. Meldrum as its Asia Pacific regional manager. Before Mr. Meldrum went to work for WellDog, Meldrum Trust purchased 30,000 shares in GSTC for $45,000.

[¶9]    In 2013, Mr. Meldrum recognized he had a conflict of interest because his then-employer, Baker Hughes, was negotiating an agreement with WellDog. Mr. Meldrum and GSTC agreed to enter into a conversion agreement wherein Meldrum Trust's equity in the company would be converted into debt. Specifically, Meldrum Trust would exchange its shares in GSTC for a promissory note. Mr. Meldrum testified Meldrum Trust is an "income tax benefit trust" for his family and he is the trustee.

2

[¶10] The conversion agreement between GSTC and Meldrum Trust was not finalized until 2016, but it was dated effective July 31, 2013. It provided for a twelve percent (12%) interest rate and at the time the conversion agreement was signed in 2016, there was $20,678.73 in accrued interest for a total balance of $65,678.73. A loan amortization schedule attached to the conversion agreement showed GSTC was supposed to start making payments to Meldrum Trust in October 2016, with the final payment due July 1, 2017.

[¶11] According to Mr. Pope, WellDog generated approximately $22 million in revenue in 2016 making the company, by some accounts, worth $80 to $100 million. However, GSTC and WellDog were experiencing cash flow problems and needed to raise funds to pay their debts.

[¶12] GSTC claimed email communications between Mr. Mactaggart, Mr. Ashton, Mr. Linklater, Mr. Meldrum and others showed a civil conspiracy to force GSTC and WellDog into financial crisis, leading to a "restructure" of the companies with the Australian investors gaining ownership of WellDog. GSTC claimed the co-conspirators interfered with its attempts to raise funds to solve its cash flow problems.

[¶13] One of the alleged steps in the Australian investors' plan involved derailing Shell Technology Ventures' investment in the company. By 2015, Shell had already invested $2 million in GSTC and was negotiating to purchase an additional $5 million in stock from the company. In the fall of 2015, Mr. Ashton, through Kinabalu, sold the same number of shares to Shell for $1.8 million, causing GSTC to lose the large investment from Shell. GSTC claimed Mr. Ashton improperly used information he gained as a director of GSTC to divert Shell's investment in the company, worsening the company's cash position.

[¶14] The next step in the alleged conspiracy to take over WellDog was to force GSTC and WellDog to default on its debts. One of WellDog's notes to ProX came due in July 2016. In order to secure an extension of the loan to October 31, 2016, WellDog gave ProX a general security interest over its assets. Mr. Linklater signed the general security agreement as a director of WellDog.

[¶15] GSTC and WellDog defaulted on debts owed to ProX, Linklater Trust, Meldrum Trust and the Mactaggart companies. Because it held the general security interest, ProX was able, under Australian law, to appoint a receiver for WellDog. Mr. Linklater and Mr. Meldrum worked for the receiver.

[¶16] WellDog's assets were eventually sold to eQnomics which operates as Qteq, another company controlled by Mr. Ashton. Mr. Meldrum became the chief executive officer of Qteq, and Mr. Linklater was gifted shares in the company.

3

[¶17] GSTC filed actions in Australia and the United States, alleging Mr. Ashton, Mr. Mactaggart, Mr. Meldrum, Mr. Linklater and others conspired to improperly take over WellDog and misappropriate GSTC's intellectual property and trade secrets. *See, e.g.*, *Gas Sensing Technology Corp. v. Ashton,* 795 Fed.Appx. 1010 (10th Cir. 2020); *Gas Sensing Technology Corp. v. Ashton*, No. 16-CV-272-F, 2017 WL 2955353 (D. Wyo., June 12, 2017). For various reasons, those suits were dismissed. *Id.*

### Suit on the Notes

[¶18] On March 16, 2018, the Trusts filed suit in the district court against GSTC to recover on their loans.[2] GSTC responded with an answer, affirmative defenses, and counterclaims. GSTC's affirmative defenses included "[The Trusts] intentionally interfered and/or conspired with others to impair [GSTC's] performance under the loan agreements causing damages which should be offset against any amounts unpaid and owing by [GSTC] to [the Trusts]." GSTC's counterclaims generally related to the Australian investors' alleged conspiracy to take over WellDog. The counterclaims included: 1) aiding and abetting the wrongful actions of others; 2) insider transaction and conversion of corporate opportunity; 3) tortious interference with contract expectancy; 4) tortious interference with contract; 5) self-dealing and unjust enrichment; 6) civil conspiracies; 7) lender liability and breach of the covenant of good faith and fair dealing based in contract; 8) lender liability and breach of the covenant of good faith and fair dealing based in tort; 9) misappropriation of trade secrets, unfair business practices, and unfair competition; and 10) set off of damages against equity and debt.

[¶19] The Trusts moved to dismiss GSTC's counterclaims. They asserted GSTC's counterclaims were permissive and the district court had discretion to refuse to hear them. They argued their complaint stated simple breach of contract claims and GSTC's counterclaims would unnecessarily complicate the case. GSTC responded to the motion to dismiss by asserting its counterclaims were related to the notes and did not unnecessarily complicate the litigation.

[¶20] The district court granted the Trusts' motion to dismiss the counterclaims. It found the counterclaims were permissive under Wyoming Rule of Civil Procedure (W.R.C.P.) 13 because they did not "arise out of the transaction or occurrence that is the subject matter of [the Trusts'] claims." It then ruled GSTC's counterclaims would unduly complicate the litigation by allowing a "simple note" case to grow "exponentially in terms of complexity and of necessary discovery" regarding GSTC's claims of an "extensive, ongoing conspiracy far beyond the . . . notes at issue herein or a defense thereof." Nevertheless, it allowed GSTC to continue to assert its affirmative defenses.

---

[2] Three other noteholders initially joined in the suit. For reasons not explained in the record, they were dismissed prior to trial.

4

[¶21]  The case proceeded to a seven-day jury trial, with Linklater Trust claiming GSTC owed it approximately $177,000 in outstanding principal and interest on the finance note and Meldrum Trust claiming GSTC owed it approximately $76,000 in outstanding principal and interest on the conversion agreement.  GSTC argued it should be excused from liability because the Trusts had breached the implied covenant of good faith and fair dealing by conspiring to prevent it from paying its debts so the co-conspirators could take over WellDog.[3]  GSTC claimed it had lost a company worth $80-100 million as a result of the co-conspirators' actions.

[¶22]  The district court granted the Trusts' motion for judgment as a matter of law under W.R.C.P. 50, finding the Linklater note and Meldrum conversion agreement were valid contracts and, "in the absence of a defense by GSTC, [the Trusts] were entitled to enforce" them.  It denied the Trusts' motion for judgment as a matter of law regarding GSTC's affirmative defense of breach of the implied covenant of good faith and fair dealing.

[¶23]  The jury returned a verdict finding Linklater Trust had first breached the implied covenant of good faith and fair dealing in the note and GSTC was excused from paying it.  It also found that Meldrum Trust had first breached the implied covenant in the conversion agreement, and GSTC was entitled to reduce the damages it owed Meldrum Trust by $43,566.49.  The district court entered judgment against GSTC in favor of Meldrum Trust for $46,737.86.

[¶24]  Linklater Trust and GSTC filed post-trial motions for judgment as a matter of law, which the district court denied.  Linklater Trust and GSTC filed notices of appeal.  Linklater Trust's appeal was later dismissed for want of prosecution.  In addition, Linklater Trust did not file an appellate brief to defend the district court's rulings in this matter.

## DISCUSSION

### 1. Dismissal of GSTC's Counterclaims

[¶25] The district court dismissed GSTC's counterclaims because they would unduly complicate the case.  It concluded it had discretion to do so under W.R.C.P. 13.  To decide whether the district court's decision was in error, we must determine the scope of Rule 13.

---

[3] The district court instructed the jury that Mr. Linklater was the director of New Horizon Ventures Pty Ltd., which is the trustee of Linklater Trust, and Mr. Meldrum is the trustee of Meldrum Trust.  The court further informed the jury that corporations or trusts are separate entities from the individuals comprising them, but they can only act through individuals.  "Before a corporation's or trust's acts will be considered those of a specific individual, or, similarly, before an individual's acts will be considered those of a corporation or trust, there must be a unity of interest and ownership that the individuality or separateness of the corporation and/or trust and the individual(s) has ceased.  If you find such unity of interest and ownership exists, then the acts of the individual(s) may be attributable to the corporation or trust."  Neither party challenges the instruction.

5

Interpretation of court rules is a question of law we review de novo. *Matter of Estate of Meeker,* 2017 WY 75, ¶ 8, 397 P.3d 183, 185 (Wyo. 2017); *Busch v. Horton Automatics, Inc.,* 2008 WY 140, ¶ 13, 196 P.3d 787, 790 (Wyo. 2008); *Bixler v. Oro Mgmt., LLC,* 2006 WY 140, ¶ 5, 145 P.3d 1260, 1262 (Wyo. 2006).

[¶26] In interpreting rules of procedure, we apply the same standards used in statutory construction. *Busch,* ¶ 13, 196 P.3d at 790 (citing *Cotton v. McCulloh,* 2005 WY 159, ¶ 14, 125 P.3d 252, 257 (Wyo. 2005)). *See also, Estate of Meeker,* ¶ 8, 397 P.3d at 186. Initially, we determine if the rule is clear or ambiguous. *Estate of Meeker*, ¶ 8, 397 P.3d at 186. If it is clear, we apply the plain language of the rule. *Id.* "'We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed, according to their arrangement and connection. We construe the [rule] as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the [rule] in *pari materia.*'" *Id.* (quoting *Busch,* ¶ 13, 196 P.3d at 790).

[¶27] Rule 13 states in relevant part:

> (a) *Compulsory Counterclaim*. –
>
> (1) *In General.* – A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.
>
> . . .
>
> (b) *Permissive Counterclaim*. – A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.
>
> (c) *Relief Sought in a Counterclaim*. – A counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party.
>
> . . .
>
> (i) *Separate Trials; Separate Judgments*. – If the court orders separate trials under Rule 42(b), it may enter judgment on a

counterclaim or crossclaim under Rule 54(b) when it has jurisdiction to do so, even if the opposing party's claims have been dismissed or otherwise resolved.

[¶28] Compulsory counterclaims – those which arise out of the transaction or occurrence that is the subject matter of the opposing party's claim and do not require adding another party over whom the court cannot acquire jurisdiction – must be pleaded in an action. Rule 13(a). Failure to plead a compulsory counterclaim will result in the claim being barred in future proceedings. *Lane Co. v. Busch Dev. Inc.,* 662 P.2d 419, 423-24 (Wyo. 1983) ("Ordinarily, a claim which is a compulsory counterclaim under F.R.C.P. 13(a) or W.R.C.P. 13(a), but is not brought, is thereafter barred."); 20 Am. Jur. 2d., *Counterclaim, Recoupment & Setoff,* § 107 (2020) ("A compulsory counterclaim that is not stated prior to the conclusion of the action by judgment is generally barred in a subsequent or independent action. The failure to file the counterclaim is res judicata of the relief that might have been obtained by the counterclaim.") (footnotes omitted).

[¶29] Under the plain language of Rule 13, any claim that is not compulsory is permissive. Rule 13(a) & (b). In other words, a permissive counterclaim is "one that does not arise out of the same transaction or occurrence furnishing the subject matter of the plaintiff's claim." *United States for the Use and Benefit of Kashulines v. Thermo Contracting Corp.,* 437 F. Supp. 195, 198-99 (D. N.J. 1976). Rule 13(b) states a pleading **may** state a counterclaim that is not compulsory. The word "may" as used in this context expresses permission to file a counterclaim. https://www.merriam-webster.com/dictionary/may ("may" is defined as "have permission to"). "In contrast to a compulsory counterclaim, a permissive counterclaim may, but need not, be stated. The claimant has the option of whether or not to plead a permissive counterclaim, and the failure to do so does not render the judgment in the case res judicata, or preclude asserting the permissive counterclaim in a subsequent action." 20 Am. Jur. 2d, *Counterclaim, Recoupment & Setoff,* § 108 (2020).

[¶30] The primary goal of Rule 13(b) "is to permit the resolution of all controversies between the parties in a single suit." *Banco Nacional de Cuba v. Chase Manhattan Bank,* 658 F.2d 875, 885 (2d Cir. 1981). *See also, Olin Corp. v. Ins. Co. of N. Am.,* 807 F. Supp. 1143, 1151 (S.D. N.Y. 1992) (quoting *Banco,* 658 F.2d at 885). "Both the words 'compulsory' in paragraph (a) and 'permissive' in paragraph (b) are descriptive of the rights of the pleader. Neither has any bearing upon the right or duty of the court when a counterclaim is presented." *Switzer Bros. v. Locklin,* 207 F.2d 483, 488 (7th Cir. 1953). *See also, United Card Co. v. Joli Greeting Card Co.,* 1976 WL 21103, *2 (N.D. Ill. 1976).

[¶31] The district court ruled all of GSTC's counterclaims were permissive. It stated GSTC seemed to concede its counterclaims were permissive. The Trusts share this view, and argue that, as a consequence, GSTC waived any argument on appeal that its counterclaims were compulsory. We read the record differently. GSTC did not concede its counterclaims were permissive. In its response to the Trusts' motion to dismiss the

counterclaims, GSTC stated the definition of a compulsory counterclaim and argued generally its counterclaims were "related to the subject matter of [the Trusts'] claims." GSTC now argues specifically that its seventh and eighth counterclaims, those alleging lender liability and breach of the implied covenant of good faith and fair dealing, are compulsory counterclaims. We agree.

[¶32] The Tenth Circuit has set out the following test to determine whether a claim is compulsory under the similar Federal Rule of Civil Procedure 13:[4]

> [A] counterclaim is compulsory if "(1) the issues of fact and law raised by the principal claim and the counterclaim are largely the same; (2) res judicata would bar a subsequent suit on the defendant's claim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and (4) there is a logical relationship between the claim and counterclaim."

*Driver Music Co., Inc. v. Commercial Union Ins. Cos.,* 94 F.3d 1428, 1435 (10th Cir. 1996) (quoting *FDIC v. Hulsey,* 22 F.3d 1472, 1487 (10th Cir. 1994), which cited *Pipeliners Local Union No. 798 v. Ellerd,* 503 F.2d 1193, 1198 (10th Cir. 1974)).

[¶33] GSTC claimed the Trusts violated the implied covenant of good faith and fair dealing in the note and conversion agreement by engineering a hostile takeover of WellDog which frustrated GSTC's ability to comply with its obligations to pay the Linklater Trust finance note and the Meldrum Trust conversion agreement. This was also one of GSTC's affirmative defenses to the Trusts' breach of contract claims. The Trusts' claims, GSTC's affirmative defense to the claims, and GSTC's counterclaims shared common issues of fact and law including whether the parties breached the contracts and, if so, which party breached first. The breach of contract evidence applies to the Trusts' claims and to GSTC's counterclaims. Thus, there is clearly a logical relationship between the Trusts' breach of contract claims and GSTC's counterclaims that the Trusts interfered with its ability to comply with the contracts. GSTC's counterclaims for breach of the implied covenant of good faith and fair dealing in the Linklater Trust finance note and the Meldrum Trust conversion agreement would be barred by res judicata in a future action. GSTC's seventh and eighth counterclaims were, therefore, compulsory and the district court should not have dismissed them.

[¶34] GSTC does not argue its other counterclaims are compulsory so we will, for the sake of this discussion, assume they are permissive. The district court concluded it had the

---

[4] "'In construing Wyoming rules of procedure, where Wyoming and federal rules of procedure are similar, we have repeatedly looked to federal cases construing the federal rule as persuasive authority.'" *Pena v. State,* 2013 WY 4, ¶ 48, 294 P.3d 13, 22 (Wyo. 2013) (quoting *Johnson v. State,* 2009 WY 104, ¶ 14, 214 P.3d 983, 986 (Wyo. 2009)).

discretion to dismiss the permissive counterclaims because they would unduly complicate the case. It had no such discretion.

[¶35] The plain language of Rule 13 does not give courts discretion to dismiss counterclaims because they would unduly complicate the litigation. To the contrary, Rule 13 makes no statement indicating a court has any discretion to dismiss either a compulsory or permissive counterclaim. As stated above, the discretion about whether or not to bring a permissive counterclaim belongs to the party, not the court. *Switzer Bros.,* 207 F.2d at 488; *United Card Co.,* 1976 WL 21103, *2. Nevertheless, the district court relied upon a few federal district court decisions to conclude it had such discretion. *See, e.g., Faunus Grp. Int'l, Inc. v. Ramsoondar,* 2015 WL 4557132, *5 (S.D. N.Y. 2015) (stating, in dicta, that "some courts have exercised 'a certain amount of discretion to decline to hear the counterclaim if it would unduly complicate the litigation'") (quoting *Sec. & Exch. Comm'n v. Republic Nat. Life Ins. Co.,* 383 F. Supp. 436, 438 (S.D. N.Y. 1974)); *Garmin Ltd. v. TomTom, Inc.,* 2006 WL 3377487, *1 (W.D. Wis. 2006) ("[T]his court has discretion to dismiss or sever permissive counterclaims when a case would become too complex or when a party would be prejudiced by the court's failure to dismiss or sever.").[5] *See also, Yassa v. EM Consulting Grp., Inc.,* 261 F. Supp. 3d 564, 567 (D. Md. 2017) ("entertaining the [claim and counterclaim] in the same case would unduly complicate the litigation"); *Kay v. Pantone, Inc.,* 395 A.2d 369 (Del. Ch. 1978) ("A court has discretion to refuse to entertain a permissive counterclaim."); *Warren, Little & Lund, Inc. v. Max J. Kuney Co.,* 796 P.2d 1263, 1265 (Wash. 1990) (en banc) ("The court has discretion to dismiss or separate properly brought counterclaims only under certain circumstances, such as when trying the counterclaim in the original action would unduly prejudice the plaintiff's claim or would substantially complicate and burden the proceedings."); 6 Fed. Prac. & Proc. Civ. § 1420 (3d.ed. 2020) ("Although Rule 13(b) encourages a party to advance all counterclaims in the responsive pleading, the court has discretion to refuse to entertain any counterclaim, when allowing it would unduly complicate the litigation." (footnote omitted)).

[¶36] The D.C. Circuit took a different approach in *Montecatini Edison, S.P.A. v. Ziegler,* 486 F.2d 1279 (D.C. Cir. 1973). The court noted the "objective of the [rules of civil procedure] with respect to counterclaims is to provide complete relief to the parties, to conserve judicial resources and to avoid the proliferation of lawsuits." *Id.* at 1282. *See*

---

[5] The district court also cited *Cheng v. AIM Sports, Inc.,* 2011 WL 13176754, *6 (C.D. Cal. 2011). The cited discussion in *Cheng* is inapposite as it did not address discretionary dismissal of permissive counterclaims under Rule 13. Instead, the court analyzed whether it should employ the discretion granted under 28 U.S.C. § 1367(c) to refuse to exercise supplemental jurisdiction over the state law counterclaims. Section 1367 codified the United States Supreme Court decision in *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-39, 1138-39, 16 L. Ed. 2d 218 (1966). *Gibbs* held that a federal court has jurisdiction over a state law claim where the federal and state claims "derive from a common nucleus of operative fact," so that the "entire action before the court comprises but one constitutional 'case,'" but it has discretion to decline to exercise jurisdiction over the state claim. *Id.*

9

*also, Banco,* 658 F.2d at 885 (The principal goal of Rule 13(b) "is to permit the resolution of all controversies between the parties in a single suit."); *Olin Corp.,* 807 F. Supp. at 1151 (same). *Montecatini*, 486 F.2d at 1282, discussed Rule 13 and its underlying policy:

> Rule 13 provides that a pleading *may* state any permissive counterclaim and *must* state any compulsory counterclaim. The word "may" is not intended to confer any discretion upon the court with respect to a permissive counterclaim; rather, it gives the litigant a choice either to assert or not to assert a permissive counterclaim. If he elects to plead it, the court must entertain it so long as it is within the court's subject matter jurisdiction. In effect, Rule 13(b) confers upon a litigant the right to have his permissive counterclaim heard and determined along with the claims of his adversary.

*Id.* (citations and footnotes omitted). "Judicial economy is best served by resolving as many disputes as possible in a single proceeding." *Id.* at 1287. *See also, Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.,* 2007 WL 1218701, *3 (E.D. Mich. 2007) ("Rule 13(b) does not grant a court any power to refuse to hear a permissive counterclaim which is properly pleaded."); *United States for Use and Benefit of Kashulines,* 437 F. Supp. at 199 ("Rule 13(b) by its terms grants the defendant an unqualified right to interpose these unrelated claims, and the court possesses no discretion to reject them."); *Bichler v. DEI Sys., Inc.,* 220 P.3d 1203, 1209-10 (Utah 2009) (citing *Montecatini* in ruling the district court erred by dismissing the defendant's permissive counterclaim in an unlawful detainer action). *See also, United Card Co.,* 1976 WL 21103, *2-3 (recognizing the split of authority regarding discretionary dismissal of permissive counterclaims and denying a motion to dismiss some of the counterclaims because they would likewise be affirmative defenses).

[¶37] The Trusts attempt to limit *Montecatini's* holding to counterclaims brought in the context of patent interference cases under 35 U.S.C. § 146 (1970). The D.C. Circuit's ruling in *Montecatini* was not so narrow. While the court did discuss counterclaims in special statutory patent interference cases, it also examined the scope of Rule 13 and specifically held the rule requires a court to entertain any permissive counterclaims which are within the court's subject matter jurisdiction. *Id.* at 1282-87.

[¶38] We agree with *Montecatini* and its progeny. Rule 13(b) allows the parties to assert their independent and unrelated counterclaims against one another "in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits." 6 Fed. Prac. & Proc. Civ. § 1420. The rule is intended to allow the "broadest possible joinder of permissive counterclaims." *Id.* By its plain terms, Rule 13 does not provide for dismissal of counterclaims simply because they would complicate the litigation. Any concern about the complexity of the action occasioned by adding a

10

counterclaim is addressed in other parts of the Rules of Civil Procedure, which we read *in pari materia* with Rule 13.

[¶39] W.R.C.P. 42(b) states: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *See Beavis v. Campbell Cnty. Mem. Hosp.,* 2001 WY 32, ¶ 17, 20 P.3d 508, 514 (Wyo. 2001) (the district court properly bifurcated the negligence claim against a medical assistant from the negligent hiring claim against a hospital); *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 829-31 (Wyo. 1994) (because the admissibility of evidence of settlement negotiations was at issue, the district court erred by refusing to separately try causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing). In addition, W.R.C.P. 21 allows the court to "sever any claim against any party." *See Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indemnity Ins. Co.,* 202 F.R.D. 212, 215-16 (S.D. Tex. 2001) (severing permissive counterclaim under Federal Rule of Civil Procedure 21); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 743 (7th Cir. 1985) ("'[Federal] Rule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants.'" (quoting 6 Wright and Miller, Federal Practice and Procedure § 1591, at 823)).

[¶40] Furthermore, discretionary dismissal of claims under Rule 13 allows parties to make an end run around Rule 12. Rule 12(b) provides specific limited bases for dismissal of claims. Dismissal of claims as unduly complicated is not among them. Nothing in our rules of civil procedure allows a court to add unstated reasons for dismissal to Rule 12(b).

[¶41] We hold the district court erred by dismissing GSTC's counterclaims and reverse and remand for further proceedings consistent with this decision.

### 2. *Jury Instructions and Verdict Form Addressing Breach of the Implied Covenant of Good Faith and Fair Dealing*

[¶42] GSTC argues the district court erred in instructing the jury on the concepts of material and non-material breach of the implied covenant of good faith and fair dealing. Meldrum Trust argues GSTC waived its complaints about the jury instructions and verdict form by failing to adequately object at trial. We have already determined it is appropriate to reverse and remand this case. We will, therefore, address the instructions and verdict form to provide the district court guidance on remand.

[¶43] The district court instructed the jury that Linklater Trust's finance note and Meldrum Trust's conversion agreement with GSTC were valid contracts. It further informed the jury that, in the absence of evidence the Trusts breached the implied covenant of good faith and fair dealing, GSTC breached its obligations by failing to pay the loans.

11

[¶44]   The district court gave the parties' agreed instruction on the definition of the implied covenant of good faith and fair dealing, which informed the jury that: 1) every contract includes an implied covenant of good faith and fair dealing which requires that neither party commit an act that would injure the rights of the other party to receive the benefit of the agreement; 2) compliance with the obligation to perform a contract in good faith requires a party's actions be consistent with the agreed common purpose and justified expectations of the other party; 3) a breach of the covenant of good faith and fair dealing occurs when a party interferes with, or fails to cooperate in, the other party's performance; 4) the purpose, intentions, and expectations of the parties should be determined by considering the contract language, the parties' course of conduct, and industry standards; 5) the implied covenant of good faith and fair dealing may not be used to create new, independent rights or duties beyond those agreed to by the parties; 6) the concept of good faith and fair dealing is not limitless and must arise from the language used in the contract or be indispensable to effectuate the intention of the parties; and 7) in the absence of evidence of self-dealing or breach of community standards of decency, fairness and reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant. *See City of Gillette v. Hladky Constr., Inc.,* 2008 WY 134, ¶¶ 30-31, 196 P.3d 184, 196 (Wyo. 2008); *Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 19, 18 P.3d 645, 653-54 (Wyo. 2001); Wyo. Civil Pattern Jury Instruction 15.06.

[¶45]   The district court then instructed the jury in Instructions No. 8 and No. 9 on how to apply the law pertaining to breach of the implied covenant.  These are the instructions GSTC takes issue with:

## INSTRUCTION NO. 8

If you determine that Plaintiff Meldrum Family Trust breached the implied covenant of good faith and fair dealing with respect to its contract with Gas Sensing Technology Corporation (GSTC), reflected in Plaintiff's Exhibit #5 (Conversion Agreement), and that Plaintiff Meldrum Family Trust's breach of the implied covenant of good faith and fair dealing occurred before GSTC breached its contract with Plaintiff Meldrum Family Trust, then GSTC is entitled to reduce the damages it owes Plaintiff Meldrum Family Trust by those reasonably foreseeable damages that directly resulted from Plaintiff Meldrum Family Trust's breach of the implied covenant of good faith and fair dealing.

If you determine that Plaintiff Linklater Family Trust breached the implied covenant of good faith and fair dealing with respect to its contract with Gas Sensing Technology Corporation (GSTC), reflected in Plaintiff's Exhibit #19 (Finance Note #3), and that Plaintiff Linklater Family Trust's

12

breach of the implied covenant of good faith and fair dealing occurred before GSTC breached its contract with Plaintiff Linklater Family Trust, then GSTC is entitled to reduce the damages it owes Plaintiff Linklater Family Trust by those reasonably foreseeable damages that directly resulted from Plaintiff Linklater Family Trust's breach of the implied covenant of good faith and fair dealing.

## INSTRUCTION NO. 9

A party who first commits a substantial breach of contract cannot complain that the other party thereafter fails to perform.

If you find that Plaintiff Meldrum Family Trust first committed a substantial breach of its contract by virtue of a breach of the implied covenant of good faith and fair dealing, then GSTC is not obligated to perform.

If you find that Plaintiff Linklater Family Trust first committed a substantial breach of its contract by virtue of a breach of the implied covenant of good faith and fair dealing, then GSTC is not obligated to perform.

[¶46] The completed verdict form provided:

We, the Jury, duly empaneled and sworn to try the above-entitled cause . . . find as follows:

## NEW HORIZON VENTURES PTY LTD AS TRUSTEE OF THE LINKLATER FAMILY TRUST

The Court has determined that, in the absence of a defense by GSTC, Plaintiff Linklater Family Trust is entitled to enforce its [c]ontract in the [o]riginal [p]rincipal amount of $137,638.25, with interest accruing at a rate of 17% from the date of default to the present and it[]s reasonable attorney's fees in enforcing its note.

1.      GSTC has asserted as an affirmative defense that Plaintiff Linklater Family Trust breached the implied covenant of good faith and fair dealing. Do you find, by a preponderance of the evidence, that Plaintiff Linklater Family Trust breached the implied covenant of good faith and fair dealing?
Yes.   ___√____

13

No. _____

     2.     If you answered "yes" to Question #1, please find which party, by a preponderance of the evidence, first breached the contract and/or the implied covenant of good faith and fair dealing.

___√_____    Linklater Family Trust

_____    Gas Sensing Technology Corporation

     3.     If you answered "yes" to Question #1 and that Linklater Family Trust was first to breach, do you find that GSTC is entitled to be excused from performing its contract with Linklater Family Trust in its entirety or is entitled to reduce the damages it owes Linklater Family Trust? (Select only one.)

_____    No, GSTC is not entitled to be excused from performing its contract with Linklater Family Trust in its entirety or reduce the damages it owes to Linklater Family Trust.

___√____    Yes, GSTC is entitled to be excused from performing its contract with Linklater Family Trust in its entirety.

_____    Yes, GSTC is entitled to reduce the damages it owes to Linklater Family Trust under the contract.

     4.     If you answered that GSTC is entitled to reduce the damages it owes to Linklater Family Trust, please indicate by what amount the damages should be reduced:
$ _____

[¶47] The district court also informed the jury that "in the absence of a defense," Meldrum Trust was "entitled to enforce its [c]ontract in the [o]riginal [p]rincipal amount of $45,000.00 with interest accruing at a rate of 12% beginning on July 31, 2013." It then asked the same questions of the jury regarding Meldrum Trust. The jury answered that Meldrum Trust had first breached the implied covenant of good faith and fair dealing and that GSTC was entitled to reduce the damages it owed to Meldrum Trust under the contract by $43,566.49.

[¶48] Obviously, the jury instructions and verdict form will have to be revised on remand to address GSTC's counterclaims for damages for the Trusts' alleged breaches of the implied covenant of good faith and fair dealing. However, there are a couple of problems with the jury instructions and verdict form that will also need to be addressed.

14

[¶49] Instruction No. 9 correctly incorporated the general rule that "'the first party committing a substantial breach of contract cannot complain that the other party thereafter fails to perform, and where one party to a contract repudiates it or refuses to perform, the injured party is not obligated to perform its promises.'" *Black Diamond Energy, Inc. v. Encana Oil & Gas (USA) Inc.,* 2014 WY 64, ¶ 26, 326 P.3d 904, 911 (Wyo. 2014) (quoting *Williams v. Collins Commc'ns, Inc.,* 720 P.2d 880, 891 (Wyo. 1986); *Winter v. Pleasant,* 2010 WY 4, ¶ 12, 222 P.3d 828, 834 (Wyo. 2010); *Baker v. Speaks,* 2008 WY 20, ¶ 14, 177 P.3d 803, 807 (Wyo. 2008)). *See also*, *Maverick Benefit Advisors, LLC v. Bostrom,* 2016 WY 96, ¶ 14, 382 P.3d 753, 758 (Wyo. 2016) ("The rule provides that a party cannot claim the benefit of a contract that it was the first to materially breach."). This concept is included in Wyoming Civil Pattern Jury Instruction 15.01A: "If a party materially breaches the contract, the non-breaching party is no longer required to continue performing under the contract."

[¶50] However, neither Instruction No. 8 nor Instruction No. 9 defined a substantial or material breach for the jury.[6] "In order to warrant termination or repudiation of a contract," a breach must be substantial or material. *Seherr-Thoss v. Seherr-Thoss,* 2006 WY 111, ¶ 14, 141 P.3d 705, 713 (Wyo. 2006) (citing *Stillwell Welding Co. v. Colt Trucking,* 741 P.2d 598, 600 (Wyo. 1987)). To determine whether a breach was substantial or material, we look to Restatement (Second) Contracts § 241 (1981, updated 2019):

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

---

[6] Some authorities use the term material breach and others use the term substantial breach. *Compare Black Diamond, supra,* and *Seherr-Thoss,* ¶ 14, 141 P.3d at 713. *Seherr-Thoss* states the breach must be substantial **and** material, but then analyzes the breach under the Restatement (Second) Contracts § 241 which uses only the term "material." There is no argument in this case that there is a substantive difference between the two terms, so we will use them interchangeably.

15

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Seherr-Thoss,* ¶ 14, 141 P.3d at 713. *See also, Williams,* 720 P.2d at 891 (noting, with favor, the district court's statement that the following factors are relevant in determining whether a breach is material or substantial: "First, the extent to which the injured party will be deprived of the benefit which he reasonably expected; secondly, the likelihood that the breaching party will cure its breach taking account of all the circumstances including any reasonable assurances made; and, thirdly, the extent to which the behavior of the breaching party comports with standards of good faith and fair dealing.").

[¶51] GSTC argues the jury should have been instructed that any breach of the implied covenant of good faith and fair dealing is, by definition, a material or substantial breach. We do not agree. The extent to which the breaching party violated the standards of good faith and fair dealing is just one of five factors considered in determining whether a breach is material or substantial. Comment f. to Restatement (Second) Contracts § 241 confirms that failure to comply with the standards of good faith and fair dealing is not, by itself, determinative. It provides: "The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing is a . . . significant circumstance in determining whether the failure is material." Restatement (Second) Contracts § 241, cmt. f. However, adherence to the standards of good faith and fair dealing "is not conclusive, since other circumstances may cause a failure to be material in spite of such adherence. Nor is non-adherence conclusive, and other circumstances may cause a failure not to be material in spite of such non-adherence." *Id. See also, Accountable Health Solutions, LLC v. Wellness Corp. Solutions, LLC,* 333 F. Supp. 3d 1133, 1153 (D. Kan. 2018) (citing Restatement Second (Contracts) § 241, comment f.).

[¶52] Although the jury verdict form incorporated the concept of a non-material breach of the implied covenant of good faith and fair dealing by allowing the jury to award partial damages, the district court did not explain the concept to the jury. If a party breaches the contract but the breach is not substantial, it will not fully excuse the injured party from performance. *See id.* Comment a. to Restatement (Second) Contracts § 241 explains that a non-material breach may give rise to a claim for damages for partial breach. *See also, America v. Mills,* 654 F. Supp. 2d 28, 33 (D. D.C. 2009) ("'[I]f a party's breach of a contract is immaterial, the aggrieved party may not cancel the contract and may only sue to collect damages resulting from the partial breach.'" (quoting *Bahiman v. 3407-9-11 29th St., N.W., Inc.,* 1990 WL 108980 at *4-5 (D. D.C. July 19, 1990)); *Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.,* 702 N.W.2d 355, 370 (Neb. 2005) (it is "well-recognized contract law that a minor breach of contract is compensable in damages"); Williston on Contracts § 43:5 (4th ed. 2020) ("[I]f the prior breach of contract was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of its duty of performance although it may recover damages for the breach." (footnotes omitted)).

16

[¶53] In summary, the jury instructions will need to be revised on remand to account for GSTC's counterclaims. The instructions should include a definition of substantial or material breach of contract. They should also explain that a first material breach of contract will fully excuse the other party's performance, while a first non-material breach will not excuse performance but may allow for an award of partial damages.

## CONCLUSION

[¶54] Wyoming Rule of Civil Procedure 13 allows for the broadest possible joinder of claims between parties. GSTC's counterclaims for breach of the implied covenant of good faith and fair dealing were compulsory counterclaims to the Trusts' breach of contract claims. Rule 13 does not authorize courts to dismiss permissive counterclaims simply because they would unduly complicate the action. The district court's dismissal of GSTC's counterclaims against Linklater Trust and Meldrum Trust is reversed. Linklater Trust did not prosecute its appeal of the jury verdict in favor of GSTC; consequently, that portion of the jury verdict stands. Neither Linklater Trust nor Meldrum Trust appealed the jury's findings that they first breached the implied covenant of good faith and fair dealing. Therefore, on remand, the jury must be instructed that Linklater Trust and Meldrum Trust first breached the implied covenant of good faith and fair dealing, and that Linklater's breach was a material breach. With regard to Meldrum Trust, the jury must be instructed on the concepts and effects of a material or substantial breach of contract.

17